UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\*\*\*

THE UNITED STATES OF AMERICA,

          Plaintiff,

vs.

OMAR QAZI,

          Defendant.

Case No. 2:15–cr–14–APG–VCF

**REPORT & RECOMMENDATION**

Before the court are the Government's supplement to its response to Qazi's *Miranda* issue (ECF No. 186) and Qazi's reply (ECF No. 191).[1]  Also before the court are Qazi's motion to suppress due to insufficient *Miranda* warnings (ECF No. 192), the Government's response (ECF No. 196), and Qazi's reply (ECF No. 197).  For the reasons stated below, Qazi's request to suppress his statements based on a failure to provide a second set of *Miranda* warnings should be denied.  Qazi's motion to suppress due to an insufficient *Miranda* warning (ECF No. 192) should be granted.

**I. Background**

On January 6, 2015, Omar Qazi exited the Harbor Island Apartments parking lot and nearly collided with Las Vegas Metropolitan Police (Metro) Officer Glover's patrol car.  (ECF. 23)  Officer Glover conducted a traffic stop, suspected Qazi of possessing drugs, and searched his vehicle.  (*Id.*)  The officer found marijuana, methamphetamine, and a black handgun under the center console's ashtray.

---

[1] This court had recommended that Qazi's second motion to suppress be denied as untimely.  (ECF No. 158)  This court also recommended, in the alternative, that the parties brief a previously unraised *Miranda* issue.  (*Id.*)  The district judge adopted the recommendation and ordered additional briefing on the *Miranda* issue.  (ECF No. 184)  This court will treat the parties' briefing on whether Qazi should have been given a second set of *Miranda* warnings as a motion to suppress.

1

(*Id.*)  A records search revealed that Qazi was a felon. (*Id.*)  Officer Glover then arrested Qazi for being a felon in possession of a firearm[2] and read Qazi his *Miranda* rights. (*Id.*)

Although Officer Glower read from Metro's standard "Advisement for Custodial Interrogation (Adults)" card, his warning omitted the words "during questioning."  The *Miranda* rights read to Qazi were as follows:

> You have the right to remain silent.  Anything you say can be used against you in a court of law.  You have the right to the presence of an attorney.  If you cannot afford an attorney, one will be appointed before questioning.  Do you understand these rights?

Metro's standard *Miranda* warning card includes the words "during questioning" at the end of the third sentence after the word "attorney." (ECF No. 186-1)  These *Miranda* warnings were given at approximately 4:09 p.m.

Qazi responded that he understood his rights, and asked the officer some questions about why he had been stopped. (ECF No. 191)  Officer Glover answered the questions, but did not ask Qazi any questions about the firearm. (*Id.*)

After approximately three hours, Detective Kitchen arrived at the scene of the traffic stop. (*Id.*)  The detective was wearing plain clothes and a ski mask, which covered most of his face. (*Id.*)  He was not wearing anything that would have made him immediately identifiable as a police detective.  Detective Kitchen was accompanied by Officer Rotta, a patrol officer who had temporarily been assigned to assist the detective.  Officer Rotta was also dressed in plain clothes, but unlike Detective Kitchen, Officer Rotta wore his badge on a lanyard around his neck.  The badge was placed on the exterior of his clothing and readily identified Officer Rotta as a Metro officer.

---

[2] Qazi's motion to suppress based on alleged Fourth Amendment violations related to the search was denied (ECF No. 32)

Officer Rotta walked Qazi over to Detective Kitchen. The detective was standing approximately 30 paces away from where he had initially been arrested. Detective Kitchen began interviewing Qazi at approximately 7:13 p.m. From interview location, the arresting officer's patrol car and Qazi's vehicle were still in Qazi's line of sight. Officer Rotta stood next to Qazi during the interview, but he did not participate.

During this interview, Qazi initially denied knowing anything about the handgun. (ECF No. 186-4) Detective Kitchen explained to Qazi that Qazi might not go to jail for the handgun and that it would be in Qazi's best interest to cooperate. (*Id.*) The detective neither promised leniency if Qazi cooperated nor did he threaten Qazi with harsher penalties if Qazi refused to cooperate. (*Id.*) Towards the end of the interview, Qazi stated that he didn't want to go to jail and stated that he had been given the handgun approximately two weeks before the date of his arrest. (*Id.*)   At no time during this interview did Detective Kitchen read Qazi his *Miranda* rights. Qazi now moves to suppress his statements based on Detective Kitchen's failure to give him *Miranda* warnings as well as the insufficiency of the original *Miranda* warnings.

## II. Legal Standard

In order to safeguard the right against self-incrimination, the police must inform a suspect of certain rights before beginning a custodial interrogation. *Miranda v. Arizona*, 384 U.S. 436, 460, 86 S.Ct. 1602, 1620 (1966).

In now familiar words, the defendant must be advised of that:

he has [1] the right to remain silent, [2] that anything he says can be used against him in a court of law, [3] that he has the right to the presence of an attorney, and [4] that is he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires.

*Duckworth v. Eagan*, 492 U.S. 195, 202, 109 S.Ct. 2875, 2880, 106 L.Ed.2d. 166 (1984).

### III. Discussion

1. <u>Detective Kitchen Was Not Required to Give Qazi a Second Set of *Miranda* Warnings</u>

"The Supreme Court has eschewed *per se* rules mandating that a suspect be re-advised of his rights in certain fixed situations in favor of a more flexible approach focusing on the totality of the circumstances." *United States v. Rodriguez-Preciado*, 399 F.3d 1118, 1128 (9th Cir. 2005) (citing *Wyrick v. Fields*, 459 U.S. 42, 48-49, 103 S.Ct. 394, 74 L.Ed2d 214 (1982)). The Ninth Circuit has "generally rejected a *per se* rule as to when a suspect must be readvised of his rights after the passage of time or a change in questioners." *Id.*

Qazi has not demonstrated that Officer Glover's *Miranda* warning had become stale when Detective Kitchen interviewed him. Detective Kitchen interviewed Qazi nearly three hours after Qazi's initial arrest. (ECF No. 191) The detective was dressed in plain clothes and interviewed him away from the scene of his initial arrest. (*Id.*) Qazi contends that these factors should have prompted Detective Kitchen to give Qazi a second set of *Miranda* warnings before the second interrogation. (*Id.*)

In *Rodriguez-Preciado*, police officers suspected that the defendant was trafficking drugs from a motel room. 399 F.3d at 1123. While officers were lawfully searching the room, the defendant arrived. *Id.* He admitted to possessing a small amount of cocaine, and was immediately arrested and given *Miranda* warnings. *Id.* at 1124. The defendant identified several drug caches in his vehicle. *Id.* Based on the information the defendant had already provided, police officers transported him to the local jail for further interrogation. *Id.* During this first interrogation, the defendant admitted that he was a drug trafficker and expressed interest in helping law enforcement. *Id.* at 1124-25.

The defendant was subsequently booked on state drug charges and spent the night at the local jail. *Id.* The next morning, one of the police officers who had interrogated the defendant the previous day decided to resume the interview. *Id.* at 1125. This officer was accompanied by another officer who

had not been involved in the defendant's initial arrest or his first interrogation. *Id.* The officers did not readvise the defendant of his *Miranda* rights before beginning the second interview, which took place approximately 16 hours after police officer had originally given the defendant his *Miranda* warnings. *Id.* During the second interview, the defendant made numerous incriminating states about his involvement with local drug traffickers. *Id.*

On appeal, the defendant challenged the district court's denial of his motion to suppress based on violations of his *Miranda* rights. *Id.* at 1228. The Ninth Circuit affirmed the denial of the defendant's motion to suppress. The panel found that the passage of 16 hours between the defendant's first and second interrogations did not render original *Miranda* warnings "stale." *Id.* at 1229. The panel also found that, even though the second interview took place at a different location and was conducted by a different officer, nothing suggested that the "effectiveness of the earlier *Miranda* warnings was diminished." *Id.*

The three-hour delay, change of location, and change of interrogator did not warrant a fresh set of *Miranda* warnings. *Id.* Under *Rodriguez-Preciado*, Metro officers could have waited 16 hours, transported Qazi to jail, and had Qazi interrogated by a different officer without giving him a fresh set of *Miranda* warnings. *Id.* Detective Kitchen interviewed Qazi near the scene of the traffic stop and within three hours of his arrest. (ECF No. 191) He was also assisted by Officer Rotta, who was readily identifiable as a Metro officer. Under these circumstances, a fresh set of *Miranda* warnings was not required. *See Rodriguez-Preciado*, 399 F.3d at 1129. Qazi's request to suppress his statements for lack of a second *Miranda* warning should be denied.

2.  Qazi's Confession Was Voluntary

A confession is involuntary if it is the product of physical or psychological coercion. *United States v. Preston*, 751 F.3d 1008, 1017 (9th Cir. 2014). "The due process test takes into consideration

the totality of all the surrounding circumstances—both the characteristics of the accused and the details of the interrogation." *Dickerson v. United States*, 530 U.S. 428, 434, 120 S.Ct. 2326, 147 L.Ed.2d 405 (2000).

Detective Kitchen spoke in a moderated tone, did not threaten Qazi, or physically harm him. (ECF No. 186-4)  Based on the body camera video and interview recording, there is no evidence to suggest that Qazi's confession was involuntary.

3.   Officer Glover's *Miranda* Warning to Qazi Were Insufficient

Qazi argues that Officer Glover's *Miranda* warning were insufficient because he omitted the words "during questioning" from Metro's standardized *Miranda* warnings.  (ECF No. 192)

Police officers must inform defendants that they have the right to consult with an attorney before and during questioning.  *People of the Territory of Guam v. Snaer*, 758 F.2d 1341, 1342 (9th Cir. 1985).

Although police officers are not required to use any particular language in their *Miranda* warnings, *California v. Prysock*, 453 U.S. 355, 359, 101 S. Ct. 2806, 2809, 69 L. Ed. 2d 696 (1981), the warnings must be unambiguous and simple enough so that uneducated and inexperienced defendants will understand their *Miranda* rights.  *United States v. Perez-Lopez*, 348 F.3d 839, 848 (9th Cir. 2003); *United States v. Connell*, 869 F.2d 1349, 1352 (9th Cir. 1989) (holding that a warning is adequate if "the existence of the right can easily be inferred from the warnings actually given").

Statements elicited after an inadequate *Miranda* warning may not be used to prove the defendant's guilt and must be suppressed.  *Connell*, 869 F.2d at 1353.

In *Snaer*, Guam's *Miranda* warnings were as follows:

Before we ask you any questions, you must understand your rights.

You have the right to remain silent.  You do not have to talk to me unless you want to do so.

> If you do want to talk to me, I must advice(sic) you that whatever you say can and will be used as evidence against you in court.
>
> You have a right to consult with a lawyer and to have a lawyer present with you while you are being questioned.
>
> If you want a lawyer but are unable to pay for one, a lawyer will be appointed to represent you free of any cost to you.
>
> Knowing these rights, do you want to talk to me without having a lawyer present? You may stop talking to me at any time and you many also demand a lawyer at any time.

758 F.2d at 1342.

On appeal, defendant argued that Guam's *Miranda* warnings did not adequately explain that he had the right to consult with an attorney before answering any questions. *Id.* The Ninth Circuit found that based on the warnings given, a reasonable defendant could have inferred that he had the right to consult with an attorney before questioning. *Id.* at 1343. Specifically, the two clauses of the fourth paragraph, when read together, adequately conveyed the right to consult with an attorney before questioning. *Id.*

In *United States v. Chavez*, Metro officers read the defendant his *Miranda* rights from Metro's "Advisement for Custodial Interrogation (Adult)" card:

> You have the right to remain silent. Anything you say can be used against you in a court of law. You have the right to the presence of an attorney during questioning. If you cannot afford an attorney, one will be appointed before questioning. Do you understand these rights?

111 F.Supp. 3d 1131, 1146 (D.Nev. 2015).

The court found that Metro's standard *Miranda* warnings did not adequately convey that the defendant had the right to consult with an attorney before or during questioning. *Id.* The order in which the warnings were given and the absence of the word "consult" made the warning

unclear: a defendant could not know whether his attorney would be a neutral observer or an active participant in the interrogation. *Id.*

Officer Glover's *Miranda* warnings fell short of those given in *Chavez*. He omitted the critical words "during questioning" from Metro's standard *Miranda* advisement. This omission rendered the warnings given to Qazi even more ambiguous than Metro's standard warnings. From the sentence "[y]ou have the right to the presence of an attorney." it would have been unclear to Qazi whether his attorney could actively participate in the interrogation or was merely there to observe. *See id.*

It also unclear when and where Qazi's attorney could be present. The word "during questioning" clarify that, at the very least, the attorney could be present while Detective Kitchen interrogated Qazi. Without those words there are doubts about whether the attorney could be present during the interview or if Metro officers could exclude the attorney. *See id.* Officer Glover's *Miranda* warnings were deficient and Qazi's incriminating statement should be suppressed.

This court recognizes that there is currently an intra-district split regarding the adequacy of Metro's standard *Miranda* warnings. *Id.* (finding Metro's standard *Miranda* warning inadequate); but *see United States v. Waters*, No. 2:15-cr-80 JCM (VCF); 2016 WL 310738 at* 6 (finding the same *Miranda* warning to be adequate). The warning given to Qazi omitted important words that rendered it deficient as given. As Qazi was not given Metro's standard *Miranda* warning, this court need not determine the adequacy of Metro's standard *Miranda* warning.

ACCORDINGLY, and for good cause shown,

IT IS HEREBY RECOMMENDED that Qazi's request to suppress his statements based on a failure to re-*Mirandize* him (ECF No. 191) be DENIED.

IT IS FURTHER RECOMMENDED that Qazi's request to suppress his statements based on insufficient *Miranda* warnings (ECF No. 192) be GRANTED.

IT IS SO RECOMMENDED.

DATED this 4th day of August, 2016.

_____
CAM FERENBACH
UNITED STATES MAGISTRATE JUDGE