1
2
3
4          UNITED STATES DISTRICT COURT
5              DISTRICT OF NEVADA
6                    * * *
7  UNITED STATES OF AMERICA,          Case No. 2:15-cr-00014-APG-VCF
8                        Plaintiff,
9     v.                                         ORDER
10  OMAR QAZI,                          (Mot Reconsider – ECF No. 289)
                                       (Rqst for Evid Hrng – ECF No. 290)
11                       Defendant.

12        Before the court is Defendant Omar Qazi's pro se Motion to Reconsider Order (Dkt. #271)

13  (ECF No. 289), and Request for Evidentiary Detention Hearing (ECF No. 290).  It was filed as

14  one document, but the clerk's office docketed it as two different motions because it asks for two

15  different forms of relief.  The motion was referred to the undersigned by the district judge on

16  March 15, 2017.  *See* Minute Order in Chambers (ECF No. 301).  After reviewing the motion, the

17  district judge found that it is really a request to reconsider the undersigned's order detaining Qazi

18  rather than a request to reconsider the district judge's earlier order.  The same day the matter was

19  referred, the court set the matter for hearing for March 24, 2017.  *See* Minute Order in Chambers

20  (ECF No. 302).

21                              **BACKGROUND**

22        Defendant Omar Qazi ("Qazi") is charged in an Indictment (ECF No. 1) returned January

23  20, 2015, with felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).

24  Qazi was in state custody and a Writ of Habeas Corpus ad Prosequendum (ECF No. 5) was

25  therefore issued February 10, 2015, to bring him to federal court.  Qazi appeared for an initial

26  appearance and arraignment and plea on February 24, 2015.  *See* Minutes of Proceedings (ECF

27  No. 13).  The Federal Public Defender's Office was appointed as defense counsel, Qazi pled not

28  guilty and the matter was set for trial on April 27, 2015.  *Id.*  The government moved for detention

1

and, because Qazi was in state custody, defense counsel submitted the matter without further argument. Qazi declined to interview with Pretrial Services, but a report was prepared outlining the information available through records checks and criminal history records. The court detained Qazi as a risk of non-appearance, and as a danger to the community.

On July 24, 2015, Qazi filed a motion to proceed pro se and for the court to conduct a *Faretta* hearing. (ECF Nos. 27, 28). Judge Ferenbach, the magistrate judge assigned to his case, set the matter for hearing on August 5, 2015, the same day as the calendar call conducted by the district judge. At calendar call, the district judge continued the trial date "pending the ruling on the motion for the defendant to represent himself." *See* Minutes of Proceedings (ECF No. 33). The district judge found, pursuant to 18 U.S.C. § 3161(h)(7)[1], that the ends of justice served by continuing the trial outweighed the best interests of the public and the defendant in a speedy trial. *Id.* The matter was continued for a status conference until the following day. *Id.* Judge Ferenbach conducted a hearing on Qazi's motions, excused government counsel, and conducted a hearing with Qazi and his attorney of record, and denied both motions (ECF Nos. 27, 28). *See* Minutes of Proceedings (ECF No. 34).

At the August 6, 2015 status conference before Judge Gordon, the court heard representations regarding the *Faretta* hearing conducted by Judge Ferenbach. *See* Minutes of Proceedings (ECF No. 35). Judge Gordon excused government counsel and conducted a second *Faretta* hearing of Mr. Qazi, after which he granted Qazi the right to represent himself and appointed CJA standby counsel. *Id.* CJA attorney Jennifer Waldo was appointed as standby counsel for Mr. Qazi in place of the Federal Public Defender for all future proceedings. *See* Order Appointing Counsel (ECF No. 36).

After Qazi was granted leave to represent himself, he filed 14 motions, 1 petition for writ of mandamus, and a notice of expert witnesses. *See* (ECF Nos. 37-52) between August 12, 2015, and August 28, 2015. He also filed an objection/motion to reconsider rulings on a previously filed motion to suppress. *See* (ECF No. 54).

---

[1] The Minutes of Proceeding prepared by the clerk of court contain a typographical error citing 18 U.S.C. § 1361(h)(7).

On September 17, 2015, Qazi filed another round of Motions (ECF Nos. 68-71), one of which (ECF No. 68) requested reasonable time to prepare a defense, allow adequate legal material, allow religious diet, and adequate medical care. His request for additional law library time was granted. *See* Order (ECF No. 72).

On November 5, 2015, Qazi filed an "Objection to Motion to Detain Defendant Pending Trial and to Conduct a Bail and/or Pre-trial Release Hearing" (ECF No. 91) which was referred to the undersigned as the judge who initially ordered him detained. The court reviewed the moving and responsive papers and entered an Order (ECF No. 101) denying his motion to reconsider. The order pointed out that Qazi had a detention hearing at his initial appearance and that Qazi had declined to interview with Pretrial Services. The court also found that Qazi had not met his burden of showing that new information existed that was not known to him at the time of the detention hearing that had a material bearing on the issue of whether there are conditions of release that would reasonably assure his appearance as required, and ensure the safety of any other person and the community. *Id.*

Qazi filed an Objection to the court's order (ECF No. 106), and a Motion to Vacate the Order Denying his Motion to Reopen (ECF No. 107). In an order entered February 24, 2016, Judge Gordon granted Qazi's request to interview with Pretrial Services. *See* Order (ECF No. 150). Qazi was interviewed and a report was prepared dated March 2, 2016.

On March 15, 2016, standby counsel Jennifer Waldo filed a Motion to Place on Calendar for a Status Hearing to Appoint Legal Counsel (ECF No. 161) which Judge Ferenbach set for hearing. At the hearing on March 23, 2016, Judge Ferenbach addressed Qazi and his standby counsel, and granted the request to appoint Ms. Waldo as CJA counsel. *See* Minutes of Proceedings (ECF No. 170) and Order (ECF No. 171).

On May 26, 2016, Judge Gordon set a hearing on Qazi's motion to reconsider the undersigned's order denying Qazi's objection to his detention order and motion to vacate. After hearing arguments of counsel, the motions were denied. *See* Minutes of Proceedings (ECF No. 182).

Qazi filed a second motion to proceed pro se and for the court to conduct a *Faretta* canvas (ECF Nos. 204, 205) on September 20, 2016. Another hearing was held, a *Faretta* canvas was conducted, his request to represent himself was granted, and substitute standby counsel, Lance Hendron, was appointed. *See* Minutes of Proceedings (ECF No. 208) and Order Appointing Counsel (ECF No. 209).

Another Motion to Reopen Detention Hearing with Due Process Concerns was filed on October 21, 2016 (ECF No. 219), which was referred to the undersigned. Qazi's pro se motion argued, among other things, that circumstances had changed since his initial detention because he had been in custody awaiting trial for a prolonged period of time. The court reviewed the moving and responsive papers and denied the motion. The written Order (ECF No. 232) denying the motion to reopen noted that Qazi had been in custody awaiting trial for a prolonged period of time because the parties stipulated to multiple extensions of the motions deadline and trial dates for various reasons, and most recently at a calendar call Judge Gordon conducted October 11, 2016. The court considered the motion and again found that he had not met his burden of showing that new information existed that was not known at the time of his initial detention hearing that had a material bearing on the issue of whether there are conditions of release that would reasonably assure his appearance as required, and the safety of any other person and the community, and therefore denied the motion. *See* Order (232) entered October 27, 2016.

Qazi continued to file many pretrial motions after the October 11, 2016 calendar call. Judge Gordon granted Qazi's request for appointment of a paralegal to assist him in trial preparation with his scheduled trial date. *See* Order (ECF No. 275) entered January 3, 2017. Proposed voir dire, jury instructions, a statement of the case, the witness list, and an exhibit list were filed by Qazi. *See* (ECF Nos. 276-280). At a calendar call held January 3, 2017, the court ruled on several outstanding motions. Specifically, Judge Gordon granted Qazi's motion in limine to exclude other bad acts evidence under Fed. R. Evid. 404(b), and affirmed Judge Ferenbach's report and recommendation, granting in part Qazi's motion to suppress as it related to his incriminating statements. *See* Minutes of Proceedings (ECF No. 281). At calendar call standby counsel, Mr. Hendron, and paralegal, Mr. Logia, raised concerns regarding the issuance and

service of subpoenas. *Id.* Mr. Qazi indicated he had filed a notice of expert which the court had not yet received. *Id.* A copy was provided to the court and government counsel and Judge Gordon directed that it be filed. *Id.*

The government objected to the timeliness of the notice of expert, and Judge Gordon continued the trial to allow the government time to review Qazi's notice of expert. *Id.* The calendar call was continued to the following day, January 4, 2017. The government filed a Notice of Appeal (ECF No. 282) of Judge Gordon's oral order regarding the motion to suppress and motion in limine on January 4, 2017. At the continued calendar call, the government notified the court of its appeal of his decision on the motion to suppress and motion in limine. *See* Minutes of Proceedings (ECF No. 284). Mr. Qazi made an oral request to reconsider his detention in light of the government's appeal. The court advised Mr. Qazi he could file a new motion to consider pretrial detention. *Id.* Calendar call was continued until Thursday, January 5, 2017. *See* Minutes of Proceedings (ECF No. 288). Judge Gordon indicated that a new order regarding trial would be issued when the Ninth Circuit issued its decision of the government's appeal.

The current motion was filed January 23, 2017, (ECF Nos. 289, 290), and referred to the undersigned on March 15, 2017.

The court set the motions for hearing on March 24, 2017. Alexandria Michael appeared on behalf of the government, and Qazi appeared in custody representing himself with standby counsel Lance Hendron. Qazi requested that his mother be allowed to testify as she was present in the courtroom. He also indicated that he wanted to call the mother of his child, Leslie Lance, and had expected her to be present, but that she was not. Over the government's objection, the court allowed Qazi to question his mother, Gloria Qazi, on the record. Government counsel was afforded an opportunity to cross-examine. Ms. Michael stated she was not expecting witness testimony and was not fully prepared to cross-examine, but questioned Ms. Qazi. *See* Minutes of Proceedings (ECF No. 305). The court advised Qazi that it did not have a copy of the Pretrial Services Report Judge Gordon ordered, and would request a copy. The court inquired of counsel for the government what its position was concerning the sentencing guideline range for the offense charged given the amount of time that Qazi had already been in custody. Government counsel

stated her position that, if convicted, Qazi was facing substantial additional time in custody. Qazi disputed the government's sentencing guideline calculation, and stated that his own research indicated that if convicted, he would be looking at between 24 and 27 months. At the conclusion of the parties' arguments, the court gave government counsel until March 31, 2017, to file a supplemental brief, and gave Qazi until April 7, 2017, to file a response indicating a written order would be issued. *Id.* Qazi vehemently objected to allowing further briefing and demanded to be released immediately. His subsequent conduct is described below.

The court has now reviewed and considered all of the moving and responsive papers, and the arguments of counsel and Mr. Qazi at the hearing, as well as the testimony of Gloria Qazi.

## DISCUSSION

### I.    The Parties' Positions

#### A.  Qazi's Motion

The motion to reconsider and request for an evidentiary detention hearing stated the requests were "based upon new and substantial changed conditions." The most significant change relied upon by Qazi was the government's appeal of Judge Gordon's order granting Qazi's motion to suppress statements due to insufficient *Miranda* warnings. Qazi argues that pursuant to the Fifth, Sixth, and Eighth Amendments to the United States Constitution and the Bail Reform Act, he should be released pending trial on his own recognizance, or bail, and/or any less restrictive conditions established by this Court in accordance with and pursuant to 18 U.S.C.A. § 3142(b)(c) and (h).

The motion relates the procedural history of his prior efforts to have his detention reconsidered, and points out that in the government's response to one of his motions (ECF No. 178), the government conceded that he was not subject to a rebuttable presumption. Government counsel indicated that she had listened to the audio recording of the February 24, 2015 initial detention hearing, and that neither the government, nor the court, mentioned that Qazi was subject to a rebuttable presumption although the written Order (ECF No. 14) stated he was. The government argued that this appeared to be an unintentional clerical error misinterpreting the court's statement.

In the current motion, Qazi argues that Judge Gordon's ruling on his motion to suppress statements was based on sound legal authority, and that the government is trying to manipulate the court's rightful ruling by arbitrarily appealing, causing him undue hardship. Qazi contends that the appeal was taken in bad faith, and that the court should "consider the government's weight of evidence against the accused after the Court's proper ruling to suppress evidence." Qazi points out that he has proclaimed his innocence since the beginning and reiterates that he is innocent. He argues that because he had been in custody for 730 days at the time this motion was filed, continuing his pretrial detention further violates his substantive due process rights. Specifically, he argues that his fundamental right to be free from involuntary confinement without due process of law has been violated and that the court should weigh the opposing government interests against the curtailment of liberty that his confinement entails.

Qazi cites *United States v. Salerno*, 41 U.S. 739 (1987) in support of his motion. He acknowledges that in *Salerno*, the Supreme Court held that the provisions of the Bail Reform Act of 1984 authorizing pretrial detention were constitutionally valid. However, the Supreme Court did not express a view about the point at which detention in a particular case might become excessively prolonged, and therefore punitive. Qazi also relies on Judge Weinstein's decision in *United States v. Gallo*, 653 F.Supp. 320, 338 (E.D.N.Y. 1986) to support his arguments. There, Judge Weinstein found that an initial denial of bail should not prejudice a defendant petitioning for release on a later date on due process grounds. Judge Weinstein's decision found that the length and burden of detention must be a significant factor in the court's balancing of safety and due process concerns.

Qazi also argues that the legislative history of the 1984 Bail Reform Act reveals that the legislators had no real basis for concern that some pretrial detainee might languish in pretrial confinement for a prolonged period since the Speedy Trial Act of 1974 provided for commencement of trial within 90 days of arrest. Qazi asserts that the only reason Congress did not include a similar 90-day limitation on detention in the 1984 Bail Reform Act is because the Justice Department convinced the Legislature that it was unnecessary since the Speedy Trial Act

was already in place and would ensure the same result.  Qazi cites references to the Congressional Record to support his position.

The motion also argues that an allegation of dangerousness unrelated to the federal charges is not a sufficient basis for detention.  Qazi asserts that the Fifth, Sixth and Eighth Amendments to the Constitution prohibit an accused from being punished prior to an adjudication of guilt in a proceeding conducted in accordance with due process of law.  He reiterates that he did not waive his speedy trial right and that the Supreme Court has acknowledged that spending time in jail awaiting trial has a detrimental impact on an individual.

Qazi represents that his elderly mother was hospitalized in Desert Springs Hospital on January 15, 2017, and needed his presence and support.  He has witnessed several assaults while in custody, and the death of a detainee due to the facility's gross negligence and deliberate indifference.  Qazi contends that his continuing detention constitutes cruel and unusual punishment in violation of the Eighth Amendment.  Additionally, he argues that immigrants and Americans should get equal treatment in regard to bond hearings.  Qazi cites the Ninth Circuit's decision in *Rodriguez v. Robbins*, 804 F.3d 1060, 1089 (9th Cir. 2015) in which the Ninth Circuit held that the government must provide periodic bond hearings to non-citizens every six months if they continue to be held to support his arguments his continued detention violates his due process rights. Qazi reasons that American citizens should have equal if not more rights.

The motion also argues that the government is responsible for his pretrial delay because it has filed three motions to continue, and has taken an interlocutory appeal because the trial court dismissed the majority of the alleged evidence against him before trial.  The court should therefore find that the government bears significant responsibility for the delay between the pre-appeal trial date of April 27, 2015, and the trial date of January 9, 2017.  He contends that the fact that he has filed multiple pretrial motions is not a constitutional justification for delaying his trial or extending his detention.  He relies on a 1992 article by Professor Einesman who states that charging a defendant with responsibility for delaying a trial because he has filed pretrial motions "creates an intolerable dilemma for the defendant."  Professor Einesman comments that the Supreme Court has held it will not tolerate government action which compels a defendant to choose between the

8

exercise of two constitutional rights.  The defendant should not have to give up his right to a speedy trial just because he files pretrial motions.

For all of these reasons, Qazi asks the court to reconsider his detention and requests an evidentiary hearing.

### B.  The Government's Response

The government filed a short Response (ECF No. 294) arguing the court has previously considered and denied prior requests for reconsideration.  The government argues that reconsideration is only appropriate if a district court: (1) is presented with newly discovered evidence; (2) committed clear error or the initial decision was manifestly unjust; or (3) if there is an intervening change in controlling law.  None of these circumstances exist and the court should therefore deny the motion to reconsider.

### C.  Qazi's Reply

Qazi filed a Reply (ECF No. 299) reiterating that his mother needs his immediate care and assistance.  The reply attached a Desert Springs Hospital-Patient Summary document showing his mother's discharge diagnoses of chronic back pain, dyspnea, essential hypertension and generalized weakness.  The reply also argues for the first time that the Bail Reform Act is not an Act of Congress because it was enacted in a joint resolution.  He maintains oint resolutions are generally used to authorize small appropriations, for continuing resolutions extending appropriation levels adopted in a prior year, to create temporary commissions or other ad hoc bodies, to create temporary exceptions to existing law, or to declare war.  A joint resolution cannot repeal an Act of Congress, in this case, the Bail Reform Act of 1966.  Therefore, Qazi reasons, that the Bail Reform Act of 1966 is the only Act of Congress that can be applied to federal cases in release and detention proceedings.  Qazi demands his immediate release asserting he has been unconstitutionally held throughout his confinement.

### D.  The March 24, 2017 Hearing

At the beginning of the hearing, the court summarized the procedural posture of this case to date and indicated that it was not clear from his motion why Qazi wanted an evidentiary hearing. Qazi stated he wanted to call his other and the mother of his son, Leslie Lance, to testify on his

behalf in support of his release. He believed the court had set the matter for an evidentiary hearing. His mother was present in court, but Ms. Lance was not. He did not know why she was not present. The court allowed Qazi to call his mother as a witness over the government's objection. Ms. Qazi testified that her son was a good man and would help her. She had recently been hospitalized and wanted her son home. She had been in Desert Springs Hospital for ten days. At first, she couldn't walk or talk, but was now walking a little. She did not believe her son was a danger to the community.

On cross-examination, Ms. Qazi testified that she had attended prior court proceedings involving her son's battery with substantial bodily harm conviction in state court. Ms. Qazi testified that although her son has been convicted, she did not believe it. She saw her grandson's mother almost every day and never saw any bruises or anything like that. Qazi's state court sentence was "totally wrong." The alleged victim didn't receive any medical treatment, and there was no substantial bodily harm. Ms. Qazi is currently disabled and has applied for disability and needs a lot of help.

After Ms. Qazi testified, the court heard oral argument from Mr. Qazi and counsel for the government. The court advised counsel for the government that it was concerned about the amount of time Qazi had been in custody awaiting trial especially in light of the government's interlocutory appeal. The court inquired what the government's position was regarding the sentencing guideline range Qazi was facing. Government counsel responded that the Ninth Circuit's February 7, 2017 decision in *United States v. Loucious* 16-10121 will effectively determine the outcome of the government's appeal on the motion to suppress statements. The government was waiting for the mandate and expected that once the mandate had been returned, Judge Gordon's order suppressing Qazi's statements would be reversed. In *Loucious*, the Ninth Circuit held that the Las Vegas Metropolitan Police Department's (LVMPD) standard *Miranda* advisement of rights was constitutionally adequate. This was the issue raised in Qazi's motion to suppress his statements. Qazi received the same rights as the defendant in *Loucious*, and therefore the government believed that once the Ninth Circuit issued its order of mandate in *Loucious*, the same result is compelled in this case. Government counsel also provided her sentencing guideline analysis indicating the

government believed his sentencing guideline range, if convicted, is between 46 to 57 months in custody.

Qazi argued that the Ninth Circuit's decision in *Loucious* did not apply to Judge Gordon's order suppressing his statements. He reiterated that he was innocent and disputed the government's sentencing guideline calculations. According to his research on the sentencing guidelines, he believed he was looking at a maximum of between 24 and 27 months, if convicted.

After oral argument the court directed the government to file a supplemental brief on the merits of Qazi's due process arguments, and sentencing guideline calculation. The court gave the government one week to file a supplemental brief, and gave Qazi a week after service of the government's supplement to file any response.

The minutes reflect that after directing further briefing "[d]efendant makes additional representations and was subsequently removed from the courtroom." Minutes of Proceedings (ECF No. 305). The courtroom deputy's understated tact summarizing what occurred is admirable. In short, Qazi did not react well to the court's order directing supplemental briefing. Qazi demanded that he be immediately released, began shouting that he was innocent, and that the court lacked jurisdiction to continue to detain him. The court twice requested that he calm down, pointing out that his written papers and oral presentation had been well done, and that the court was considering the merits of his motion. However, Qazi's outburst continued. Qazi shouted out asking whether the court's refusal to immediately release him was a "Trump Muslim thing." When his shouting and demands continued, the court directed the Marshals to remove him from the courtroom. Qazi physically resisted being removed from the courtroom. His mother repeatedly shouted out, "Omar don't" as he physically resisted the Marshals attempting to remove him. When one of the Marshals attempted to place him in handcuffs, he became physically combative, threw the Marshal down over the table causing the table to crash and both Qazi and the Marshal to fall to the ground. Qazi continued his verbal abuse and used profanities directed to the Assistant U.S. Attorney and his standby counsel. He remained physically combative until he was eventually brought under control and removed to the holding cell adjacent to the courtroom.

### E.  The Government's Supplement

The government's supplemental brief (ECF No. 307) argues that Qazi's due process rights have not been violated by his continued pretrial detention.  In support of its arguments, the government exhaustively cites the number of motions to continue the trial and the reasons for the various continuances.  The government also cites provisions of the Speedy Trial Act and cases construing it that have held that delay resulting from pretrial motions is excludable.

The supplemental brief also argues that the government's interlocutory appeal was timely and well-taken.  The notice of appeal was filed one day after Judge Gordon's decision on a highly contested issue in this district.  The government claims Qazi made inculpatory statements after being provided *Miranda* warnings virtually identical to the Supreme Court's articulation of those rights in *Miranda v. Arizona*.  The Ninth Circuit's reasoning and rationale in its recent decision in *United States v. Loucious*, 16-10121 supports the government's position that the warnings Qazi received are constitutionally adequate.  Additionally, pursuant to 18 U.S.C. § 3161(h)(1)(C), any delay resulting from an interlocutory appeal is excluded under the Speedy Trial Act.

The weight of the evidence in this case may properly be considered pending appeal by the government pursuant to 18 U.S.C. § 3143(c).  That statute provides that in a case in which an appeal has been taken by the United States, the court should apply the factors listed under 18 U.S.C. § 3142(g) which includes the weight of the evidence.  The government cites *United States v. Leon*, 468 U.S. 897, 907 (1984) to support its arguments that the court may consider evidence that has been suppressed in its "cost-benefit analysis."  Suppressed evidence is not automatically excluded for all purposes.  Suppressed evidence may be presented at sentencing and revocation hearings.  Thus, the court should consider that Qazi confessed in this case in its cost-benefit analysis.

The government also argues that it has not caused any delay under the Speedy Trial Act.  The government calculates that approximately 50 of the 70-day Speedy Trial Act timeframe has run.  The remaining time has been tolled and excluded through stipulations, motions, attorney substitutions, and most recently, an appeal.

The defendant has been detained both as a flight risk and as a danger to the community because the court found that there are no conditions or combination of conditions that would reasonably assure the defendant's appearance as required, and the safety of any other person and the community. The defendant's conduct in the March 24, 2017 hearing "further weighs in favor of defendant's pretrial detention." The government also argues that Qazi's argument that he should have equal treatment in regard to bond hearings that immigrants receive is "misplaced." The Ninth Circuit case he cites involves bond hearings for immigrants awaiting completion of removal, and does not apply to bond hearings for defendants awaiting trial.

The government calculates that Qazi faces a sentencing guideline range of between 46 and 57 months based on analysis it provides in some detail in its supplemental brief. In this case, Qazi has been in custody since February 24, 2015, a little over 25 months, and far less than the low end of the sentencing guideline range. The government therefore asks that the court deny his motion to reconsider.

### F. Qazi's Supplemental Response

Qazi filed a Response (ECF No. 308). He apologizes to the court and anyone he might have offended because of his actions at the March 24, 2017 hearing indicating "it is hard to hold your anger and frustration when you are being treated unjustly." He also states that he was not allowed to fully present all of his facts properly and was rushed by the court because of time limitations. He asks that the court schedule a detention hearing promptly with timely notice so preparations can be made to have Leslie Lance appear and testify. The Bail Reform Act requires that a motion be determined promptly. He filed his reply before he received the government's supplemental papers. Because he believes he was cut off from presenting pertinent information at the March 24, 2017 hearing, he reiterates a few arguments and adds some additional arguments that were intended to be made at the hearing. The response reiterates arguments that he is being held based on the Bail Reform Act of 1984 when the motion and hearing should be determined under the provisions of the Bail Reform Act of 1966. The Bail Reform Act of 1984 is not an Act of Congress and the 1966 Act does not authorize his detention.

The response argues that assuming *arguendo* he is at a sentencing hearing, the sentencing guidelines indicate that he would be an offense level of 14 and a possible criminal category of 3 which would put him in the sentencing range of between 21 and 27 months. Under the *Rooker-Feldman* Doctrine, a federal district court lacks authority to collaterally review a state court judgment. The *Younger* doctrine and its progeny restrains federal courts from interfering in ongoing state judicial proceedings. His previous Nevada conviction for battery with substantial bodily harm is currently under review by a writ of coram nobis in the state court. Thus, this court lacks jurisdiction to use this prior conviction in sentencing should he be convicted in this federal case. Qazi disputes that his conviction for battery with substantial bodily harm constitutes a "crime of violence" under § 4B1.2(a)(1). He believes that Leslie Lance's testimony at an evidentiary hearing "will reflect that she was never inflicted with substantial bodily harm." His state court conviction is unlawful and a fraud, and if the court uses this conviction for any reason, including facing a finding of dangerousness, "it would only continue the fraud and corruption done by the State of Nevada."

The response also points out that the court previously erred in finding that a rebuttable presumption applied under 3142(f)(1)(A). The court also erred in finding that Qazi had two misdemeanor convictions for first and second offense DUIs, and an outstanding surety bail detainer in one of his state court cases. Detention is only authorized upon a finding of clear and convincing evidence of dangerousness and risk of flight by a preponderance of the evidence. The response reiterates arguments that his due process rights have been violated, his speedy trial rights have been violated, aliens and Americans should get equal treatment in regard to bond hearings, and that the government is responsible for the lengthy pretrial delay in this case. He therefore asks the court to schedule a "full evidentiary hearing" promptly asserting he is "a hostage, unlawfully captive and confined in a private prison within this State of Nevada **without an Act of Congress**!" (emphasis in original).

## II.    Applicable Law and Analysis

A detention hearing may be reopened only "if the judicial officer finds that information exists that was not known to the movant at the time of the hearing," and that the information "has

a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of the person as required, and the safety of any other person and the community." 18 U.S.C. § 3142(f). As the court noted in *United States v. Ward*, 63 F. Supp. 2d 1203 (C.D. Cal. 1999), "courts have interpreted this provision strictly, holding that hearings should not be reopened if the evidence was available at the time of the initial hearing." *Id.* at 1206.

As an initial matter, Qazi argues that the Bail Reform Act of 1984 is not an Act of Congress because it was enacted as part of a joint resolution. Qazi argues that the court should therefore apply the Bail Reform Act of 1966 in deciding his release or detention. The Bail Reform Act of 1984 was passed as part of the Comprehensive Crime Control Act of 1984, and made major revisions to many areas of criminal law, in addition to the law governing pretrial release. Pub. L. No. 98-473. The Bail Reform Act of 1984 repealed the Bail Reform Act of 1966. 18 U.S.C. § 3141-51 (repealed). The Bail Reform Act of 1984 establishes standards and procedures governing release or detention in the pretrial phase of a case, the period between conviction and sentencing, and the period during the pendency of an appeal by either side. The 1984 Act changed the 1966 Act in several respects. Most relevant here, it directed courts to consider whether the defendant presents a danger to other persons or the community. 18 U.S.C. § 3142(g). In 1986 Congress amended § 3142(f) of the 1984 Bail Reform Act to add the last sentence which authorizes the court to reopen a detention hearing under certain circumstances.

Qazi's argument that the Bail Reform Act of 1984 is not an Act of Congress because it was enacted in the joint resolution process has been addressed and rejected by the only courts of appeal which have considered the issue. In *Int'l Bhd. of Elec. Workers v. Washington Terminal Co.*, 473 F.2d 1156. 1163 (D.C. Cir. 1972) the D.C. Circuit held that "a joint resolution is a bill within the congressional rules and the processes of the Congress. Joint resolutions are sent to the President for approval and "have the full force of law." In 1985, shortly after the passage of the Bail Reform Act of 1984, the Eighth Circuit specifically addressed arguments that the Bail Reform Act of 1984 was unconstitutional because it went to the President as a joint resolution rather than a bill in *United States v. Powell*, 761 F.2d 1227, 1234-35 (8th Cir. 1985). There, the Eighth Circuit noted that the Comprehensive Control Act of 1984, including the Bail Reform provisions, became law

"by way of amendment to a joint resolution making 'continuing appropriation' for the operation of the federal government." *Id.* at 1234. It rejected the defendant's arguments that a joint resolution does not have the same force of law holding "a joint resolution, once signed by the President, is every bit as much of a law as a bill similarly signed." *Id. See* also *e.g., Constitution, Jefferson's Manual, and Rules of the House of Representatives,* H.R. Doc. No. 103-342, 103 3rd Cong. Sess., 2nd Sess. § 397 (1995) (stating that a joint resolution "is a bill so far as the processes of the Congress and relation to it are concerned. With the exception of joint resolutions proposing amendments to the Constitution, all these resolutions are sent to the President for approval and have the full force of law." (internal citations omitted).

The court set Qazi's motion for hearing on March 24, 2017, after the district judge referred it. At the time of the hearing, the district judge had granted Qazi's motion in limine to exclude evidence of other crimes under Fed. R. Evid. 404(b), and upheld the report and recommendation of Judge Ferenbach that incriminating statements he made should be suppressed. This was new information not known at the time of the original detention hearing, or in subsequent requests to reopen or reconsider detention. The government's interlocutory appeal of those rulings was also new information not known at the time of the initial detention decisions.

In *United States v. Peralta*, 849 F.2d 625 (D.C. Cir. 1988), the D.C. Circuit held that the district judge properly reopened a detention hearing after he had ruled against a defendant on a suppression motion. The D.C. Circuit held that the adverse ruling on the defendant's motion to suppress was new information that had a material bearing on defendant's likelihood to appear at future hearings. However, in *United States v. Watson*, 475 F. App'x 598 (6th Cir. 2012), the Sixth Circuit found that a defendant is not necessarily entitled to an order reopening a detention hearing if a motion to suppress some evidence is granted. Neither decision is binding on this court, but the court set the matter for earing to allow both sides to argue the ramifications of the court's pretrial rulings which clearly eroded the strength of the government's case.

The court was also concerned about the amount of time that Qazi has been in custody, and whether his continued detention awaiting trial while the government's interlocutory appeal was pending might result in a longer period of incarceration than the sentencing guidelines would

recommend. At least one circuit has held that the length of current or potential future detention cannot be considered in deciding whether to reopen a detention hearing reasoning it is not material to the issue of risk of flight or dangerousness. *United States v. Hare*, 873 F.2d 796 (5th Cir. 1989). That decision is not binding on this court, and the Ninth Circuit has not addressed whether the district court may properly consider the length of current or potential future detention. The court set the motion for hearing and ordered supplemental briefing to consider Qazi's due process arguments and the parties' position concerning the length of his current and potential future detention.

At the hearing, Qazi stated he believed the court had set the matter for an evidentiary hearing and asked to call his mother to testify on his behalf in support of his release. The court granted his request. Qazi stated he had also asked that Leslie Lance, the mother of his son, and victim of one of his felony convictions, to be present to testify as well. He stated he was surprised that she was not present. He did not, however, request a continuance of the hearing for her to be present and testify. To the contrary, when the court indicated that supplemental briefing would be ordered on the merits of his request to reopen, Qazi vehemently objected and demanded to be immediately released telling the court it had no jurisdiction to continue to detain him. Contrary to the arguments in Qazi's response to the government's supplement, Qazi was not cutoff from arguing his position. He had completed his remarks when the court ordered supplemental briefs. He became enraged at this ruling, and demanded to be immediately released shouting the court had no jurisdiction to continue to detain him. The court tried to calm Qazi down by explaining that he had represented himself well, the court was considering his motion, and asking that he not "make matters worse for himself" by continuing his inappropriate behavior. With his mother in the courtroom pleading with him to stop, Qazi continued to argue, shout, ask if the court's decision was a "Trump Muslim thing". The court advised Qazi it had other cases waiting and requested that the Marshals remove him. What occurred next is summarized *infra*.

The Ninth Circuit has now addressed the sufficiency of Miranda warnings relevant to the appeal of Judge Gordon's order suppressing Qazi's statements. On March 27, 2017, Judge Dorsey entered an Order of Mandate in *United States v. Loucious*, 15-cr-00106-JAD-CWH (ECF No. 124).

In *Loucious*, the Ninth Circuit reversed the district judge's order suppressing the defendant's statement in a case in which the defendant argued that the *Miranda* warnings he received were constitutionally deficient because they did not tell him of his right to consult with an attorney before questioning. After his arrest Loucious received the following warnings:

> You understand you have the right to remain silent. You understand that anything you say can be used against you in a court of law. You have the right to the presence of an attorney during questioning, and if you cannot afford an attorney, one will be appointed before questioning. Do you understand these rights?

After receiving these warnings, Loucious made damaging admissions. The Ninth Circuit held that the warnings Loucious received were constitutionally adequate and comported with the Supreme Court's holding in *Miranda v. Arizona*, 384 U.S. 436 (1966). Loucious argued that the warnings were deficient because they did not tell him he could consult with an attorney before questioning so that he could decide whether to speak with the officers at all. The Ninth Circuit rejected this argument holding the defendant "need not have been informed explicitly of his right to consult with counsel prior to questioning." It found that the *Miranda* warnings Loucious received adequately conveyed notice of the right to consult with an attorney before questioning, and therefore reversed the district court's order suppressing Loucious' statements.

In this case, Judge Ferenbach issued a Report and Recommendation (ECF No. 199) recommending that Qazi's motion to suppress be granted due to an insufficient *Miranda* warning Qazi received the following warnings:

> You have the right to remain silent. Anything you say can be used against you in a court of law. You have the right to the presence of an attorney. If you cannot afford an attorney, one will be appointed before questioning. Do you understand these rights?

*Id.* at p. 2. Judge Ferenbach found that the *Miranda* warnings Qazi received were insufficient because they did not adequately convey that the defendant had the right to consult with an attorney before or during questioning. By omitting the words "during questioning" from Metro's standard Metro's standard advisement, Judge Ferenbach reasoned that the warnings were ambiguous and made it unclear when and where Qazi's attorney could be present. The district judge affirmed Judge Ferenbach's holding at the January 3, 2017 calendar call before *Loucious* was decided based

on Judge Ferenbach's finding two critical words "during questioning" were omitted from the warnings Qazi received. The warning Qazi received specifically advised him of the right to the presence of counsel, and that if he could not afford an attorney, one would be appointed *before* questioning. It therefore seems likely the Ninth Circuit will find the Miranda warnings Qazi received were constitutionally adequate.

The court has carefully reviewed and considered the moving and responsive papers, the arguments of counsel and the Pretrial Services report, as well as the testimony of Qazi's mother, Gloria Qazi, at the March 24, 2017 hearing. The court finds Qazi has not established that there is new information that has a *material* bearing on whether conditions of release can be fashioned to reasonably assure his appearance and the safety of the community.

In deciding whether to release or detain a defendant, the court first decides whether he is eligible for detention under § 3142(f). Section 3142(g) lists the factors a court must consider in deciding whether to release or detain. The first factors are the "nature and circumstances of the offense charged." In this case, Qazi is charged with felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) and 924(a)(2). In *United States v. Twine*, the Ninth Circuit held that felon in possession of a firearm was not a crime of violence for purposes of the Bail Reform Act. 344 F.3d 987 (9th Cir. 2003) (reh'g en banc denied 362 F.3d at 1163 (9th Cir. 2004)). However, in 2006, Congress amended the Bail Reform Act to authorize detention of a defendant charged with any felony that involves possession or use of a firearm. The 2006 amendment explicitly making a defendant eligible for detention in a case in which he is charged with a felony involving the use or possession of a firearm renders the Ninth Circuit holding in *Twine* moot. Thus, Qazi was and remains eligible for detention based on the offense charged.

The second factor is the "weight of the evidence against the person." In this case, the weight of the evidence is strong. Qazi was arrested on January 6, 2015, after he left an apartment complex parking lot and nearly collided with a Las Vegas Metropolitan Police Department patrol car. *See* Report and Recommendation (ECF No. 199). The officer conducted a traffic stop, suspected Qazi of possessing drugs and searched his vehicle. *Id.* Marijuana, methamphetamine and a black handgun were found in the center console's ashtray. *Id.* A records search revealed

Qazi was a convicted felon. Officer Grover arrested Qazi for this offense and read *Miranda* rights to him. *Id.* Qazi responded that he understood his rights. *Id.* He was subsequently questioned by a detective at the scene. *Id.* During his interview, Qazi initially denied knowing anything about the handgun. *Id.* However, Qazi subsequently confessed. Judge Ferenbach found that Qazi's confession was voluntary, but that the *Miranda* warnings he received were insufficient. The government is correct that although the evidence has been suppressed, the court may consider the evidence for other purposes. The weight of the evidence is the least significant factor under controlling Ninth Circuit authority. Nevertheless, it weighs in favor of detention.

The next factors the court considers are the "history and characteristics of the person" which may include Qazi's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings. In this case, Qazi was in state custody at the time of his initial appearance. At that time, he was awaiting preliminary hearings arising out of arrests in January and February, 2015 in two separate cases on state felony charges of possession of a gun by a prohibited person, possession with intent to sell controlled substance, possession of controlled substance, and trafficking in controlled substance. Preliminary hearings were set for February 25, 2015 and April 9, 2015. The initial Pretrial Services report showed the Clark County Detention Center reported he had an outstanding $25,000 surety bail detainer issued against him pending the April 9, 2015 preliminary hearing.

Qazi declined to interview with Pretrial Services before his initial appearance. The court therefore had no information about his personal information relevant to release or detention. However, the Pretrial Services report prepared pursuant to Judge Gordon's order dated March 2, 2016, indicates that Qazi has ties to this community. He was born in Los Angeles, California, and lived there until 2004 until relocating to Las Vegas, Nevada. He was incarcerated in the Nevada State Prison from February 2012, to September 2014, and relocated to Las Vegas after his release. Pretrial Services verified that if released he would be able to reside with his mother who rented an apartment in Las Vegas. His mother verified that Qazi has a six-year-old son from a previous

relationship with Leslie Lance, who resided in Henderson, Nevada. However, Qazi has been unemployed since approximately 2009 and was unable to provide Pretrial Services with any information regarding the reason for his unemployment. He reported he worked for four months sometime between 2007 and 2009 as a technical support staff member, but resigned due to the pressure of the job. Prior to that, he worked for Little Caesars as a teenager.

Qazi reported that his health was good although he was stabbed in the eye in 2005 which caused him to have a prosthetic eye implanted. He was also diagnosed with depression and anxiety in 2005, but could not recall who assessed him. He was seen by a doctor in 2011 who prescribed Zoloft and Xanax. Once placed in federal custody, he was prescribed medication which Qazi reported controlled his mental health symptoms.

Qazi reported he began drinking alcohol at age 19, and last consumed alcohol in 2011. He reported to Pretrial Service that he had never used or abused any other controlled substances. Qazi's mother told Pretrial Services he used marijuana for asthma.

Pretrial Services conducted a records check through the Las Vegas Metropolitan Police Department and FBI/NCIC, NCJIS databases, and the Nevada Division of Parole and Probation which revealed the following criminal history:

- Arrested on March 4, 2006 for obstructing a public officer and convicted of this misdemeanor offense on January 8, 2007, and sentenced to credit for time served.

- He was arrested on April 7, 2007, for carrying a concealed weapon ("CCW") and other charges, and convicted of misdemeanor CCW April 11, 2007.

- He was arrested for pandering on July 6, 2008, and pled guilty to a gross misdemeanor pandering offense December 2, 2008, and sentenced March 30, 2009, to 12 months in custody suspended with probation not to exceed three years.

- He was arrested on warrants in September and October 2009, and his probation was revoked October 27, 2009. Pretrial Services contacted the Nevada Department of Parole and Probation ("P&P") who reported Qazi commenced supervision on March 30, 2009, was revoked on October 27, 2009, and sentenced to 12 months in custody with 53 days' credit for time served. He tested positive while on supervision. He was arrested August 28, 2009 for battery/domestic violence, failure to pay supervision fees, possessing gang-related material, and failure to complete his community service. However, the August 28, 2009 arrest was not noted in the criminal arrest record.

- Qazi was cited for battery on November 23, 2008, and pled guilty to a misdemeanor charge April 21, 2009, and sentenced to credit for time served.

- Qazi was cited January 6, 2009, for petty larceny, convicted of a misdemeanor offense, and sentenced to credit for time served on December 24, 2008.

- Qazi was arrested for battery/domestic violence and coercion by force on March 30, 2009. He pled guilty to a misdemeanor battery May 11, 2009, and was sentenced to credit for time served, 48 hours of community service, and a $340 fine which was excused in lieu of jail time on December 18, 2009. With respect to the coercion-force arrest on June 9, 2009, he pled guilty to an amended charge of attempted theft, a gross misdemeanor, and was sentenced to 12 months in custody on October 21, 2009.

- Qazi was arrested on October 21, 2009 for theft, and convicted of the gross misdemeanor offense the same day and sentenced to 12 months in custody.

- Qazi was arrested on two counts of battery/domestic violence on November 9, 2009, and convicted of a misdemeanor offense on November 23, 2009, and sentenced to 6 months in custody.

- Qazi was arrested on December 14, 2010, for child abuse and two counts of battery/domestic violence. On October 12, 2011, he pled guilty to an amended charge of battery with substantial bodily harm, a felony, and a misdemeanor battery. He was sentenced to 12 to 60 months for the felony offense, and to concurrent time on the misdemeanor offense.

- Qazi was arrested on February 12, 2012, for using or being under the influence of a Schedule I/II/III/IV controlled substance and DUI. The controlled substance charge was dismissed, and he pled guilty to a misdemeanor offense on May 15, 2014, and was sentenced to 30 days in custody and a $585 fine.

- Qazi was arrested on February 8, 2015, for possession of a controlled substances and trafficking a Schedule I controlled substance. These charges were dismissed April 15, 2015, and appear to arise out of Qazi's arrest in this case as these offenses and the felon in possession charge arise out of the January 6, 2015 state arrest
- discussed in the report and recommendation on his motion to suppress statements.

The last factor the court considers is whether the time of the current offense or arrest Qazi was on probation, parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under federal, state or local law. As indicated, Qazi was in state custody at the time of his initial appearance in this case. However, it appears that he was arrested on state charges, and those state charges were dismissed in light of this federal prosecution.

Considering all of the factors, the court finds that Qazi remains a serious risk of flight and risk of reoffending. Although he has ties to this community, he has been unemployed since 2009 and has no explanation for his lack of employment. He has multiple misdemeanor, gross misdemeanor and felony convictions involving obstructing a public officer, pandering, and theft. More significantly, he has misdemeanor, gross misdemeanor and felony convictions for crimes of

violence including battery/domestic violence and battery with substantial bodily harm. His criminal arrest history reflects multiple arrests for possession of controlled substances, possession with intent to sell, and trafficking. He was found in possession of controlled substances at the time of the arrest arising out of his indictment in this case.

The court views him as a risk of non-appearance based on his lack of stable employment, known mental health history, known substance abuse history, prior arrests for drug related offenses and failures to appear, and prior probation failure/revocation. The court also views Qazi as a risk of reoffending based on the nature of the offense charged, his known mental health history, his known substance abuse history, his prior arrests and convictions for weapons-related offenses, and prior arrests and convictions for crimes of violence and arrests and convictions for drug-related offenses. Finally, Qazi's behavior at the March 24, 2017 hearing reinforces the court's finding that Qazi is violent. His behavior at the hearing suggests he is unlikely to obey any order the court might impose with which he disagrees. The court finds there are no conditions or combination of conditions that would reasonably assure his appearance or the safety of the community. Accordingly, having reviewed and considered the matter,

**IT IS ORDERED** that:

1. Qazi's Motion for Evidentiary Hearing (ECF No. 290) was **GRANTED** to the extent he was allowed to call his mother to testify at the March 24, 2017 hearing.

2. Qazi's Motion to Reconsider Detention (ECF No. 289) is **DENIED**.

DATED this 8th day of June, 2017.

PEGGY A. LEEN
UNITED STATES MAGISTRATE JUDGE