DAYLE ELIESON
United States Attorney
ALEXANDRA MICHAEL
PATRICK BURNS
Nevada Bar No. 11779
Assistant United States Attorneys
501 Las Vegas Boulevard South, Suite 1100
Las Vegas, Nevada 89101
(702) 388-6336/Fax: (702) 388-6020
John.P.Burns@usdoj.gov

*Representing the United States of America*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**
-oOo-

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                         Plaintiff,<br><br>              vs.<br><br>OMAR QAZI,<br><br>                         Defendant. | Case No.: 2:15-cr-00014-APG-VCF<br><br>**GOVERNMENT'S *EX PARTE* MOTION IN LIMINE TO PRECLUDE INTRODUCTION OF FINDINGS MADE AS TO SERGEANT FRANK BIEN IN *UNITED STATES V. FRANK CHAVEZ*, CASE NO. 2:15-CR-00035-RFB-CWH** |

The United State of America, by and through DAYLE ELIESON, United States Attorney, and ALEXANDRA MICHAEL and PATRICK BURNS, Assistant United States Attorneys, hereby respectfully submit this Government's *Ex Parte* Motion *in Limine* to Preclude Introduction of Findings Made as to Sergeant Frank Bien in *United States v. Frank Chavez*, Case No. 2:15-cr-00035-RFB-CWH.

/ / /

/ / /

/ / /

1

**POINTS AND AUTHORITIES**

## I. Introduction

The Government intends to call as a witness in its case-in-chief Las Vegas Metropolitan Police Department (LVMPD) Sergeant Frank Bien. Sgt. Bien was a detective in LVMPD's Firearms Investigation Unit (FIU) at the time of the events in this case. Sgt. Bien's principal role in the investigation was to apply for and obtain a search warrant permitting the search of Omar Qazi (Qazi)'s car and seizure of Qazi's buccal swab DNA standard. Sgt. Bien executed the warrant, impounded the charged firearm and Qazi's buccal swab, and otherwise documented the property in the car.

In an unrelated case, *United States v. Frank Chavez*, Case No. 2:15-cr-00035-RFB-CWH, United States District Court Judge Richard F. Boulware entered an order on a suppression motion involving Sgt. Bien and another FIU detective, Breck Hodson (who is not a witness in this case). Judge Boulware made the following findings as to Det. Hodson and Sgt. Bien:

> 2. Hodson's Affidavit Was Supported By Probable Cause
>
> The Court finds that Hodson's statement to Judge Lippis that Chavez was Rentfro's son, which went uncorrected after Hodson later discovered that it was untrue, constituted a knowing false statement. However, it did not affect the existence of probable cause for the search warrant.
> The evidence shows that Hodson's representation to Judge Lippis that Chavez was Rentfro's son,[3] which Hodson did not attempt to correct after he discovered the truth, was a knowing false statement. Although Hodson did not know of the falsity of the statement at the time he made the warrant application (because he had been informed by O'Leary that Chavez was in fact Rentfro's son), Bien informed Hodson immediately after the call of the falsity of that information. Hodson and Bien's decision to nevertheless execute the warrant, without calling Judge Lippis back to ask

2

whether this information would change her probable cause determination, converted an innocent misrepresentation into one that was knowingly false.

Nevertheless, setting this false material aside, probable cause existed to issue the search warrant for Chavez's bedroom. Even absent any information as to the relationship between Rentfro and Chavez, the Court finds that Judge Lippis had sufficient information from which to conclude that there was a "fair probability that contraband or evidence of a crime" would be found in Chavez's bedroom. Needham, 718 F.3d at 1194. Judge Lippis was informed that O'Leary had recovered a firearm from Chavez's rear pocket. She was also informed that Rentfro entered Chavez's bedroom while Alfonsi and O'Leary were outside with Chavez and that Rentfro discovered shotgun ammunition in the bedroom. Judge Lippis could also conclude that Rentfro was a credible informant due to the fact that she was known to the officers and physically present at the scene and that her previous statement that Chavez possessed a gun had been corroborated. All of these facts support a finding of probable cause as it relates to the items sought in the warrant. Based on these facts, the false statement contained in the warrant application was not essential to the finding of probable cause.

---

[3] In Hodson's affidavit, this misrepresentation was evidenced by the statements that Rentfro "identified her son as Frank Chavez," that Rentfro "stated that . . . she was in a verbal argument with her son," and that "Ms. Rentfro was staying inside the . . . room at the residence that her son rents from the homeowner." Warrant App. at 3.
ECF No. 55 at 18:18-19:17.

The Government subsequently filed a motion asking Judge Boulware to amend his order, specifically his finding that Det. Hodson and Sgt. Bien made a "knowingly false" statement. The evidentiary and legal bases for that request are described at length in the motion. ECF No. 65. At Frank Chavez's sentencing, Judge Boulware denied the motion without prejudice to it being later refiled. ECF No. 67. Undersigned counsel recalls that Judge Boulware's rationale for the denial without prejudice was that Chavez (whose plea agreement permitted him to appeal Judge Boulware's order on the suppression motion) would be taking an appeal. Judge Boulware preferred to have his order reach the Ninth Circuit without any modification at that point.

Chavez's appeal was ultimately decided adversely to the Government on unrelated grounds. *See United States v. Chavez*, 673 F. App'x 754 (9th Cir. 2016). This caused the Government to move to dismiss the indictment without prejudice. ECF No. 116. Prior to that dismissal, the Government did not refile the motion to amend. That was a function of the case's unique procedural posture and path toward dismissal. The United States Attorney's Office is currently considering whether the motion should be refiled in light of the potential continuing impact of the decision on these police officers' careers.

The Government now moves on an *ex parte* basis for an order that: (1) the *Chavez* finding that Sgt. Bien made a "knowingly false" statement is wholly inadmissible at Qazi's trial; and (2) the Government is not obligated to disclose the *Chavez* finding to Qazi.

## II.   Legal Argument

### A. Legal Standard for Relevant Evidence and the Exclusion of Irrelevant and Unfairly Prejudicial Evidence Under Federal Rules of Evidence 401-403

Federal Rule of Evidence 401 provides that "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Rule 402 provides in part that "[i]rrelevant evidence is not admissible." Rule 403 permits a district court to exclude relevant evidence if the evidence's probative value is substantially outweighed by the danger of "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Evidence is unfairly prejudicial if it suggests a decision on an improper basis. See Fed. R. Evid. 403 Advisory

4

Committee's Note. District court judges enjoy broad discretion to exclude evidence under Rule 403, and their determinations will not be disturbed on appeal absent an abuse of that discretion. *Wood v. Alaska*, 957 F.2d 1544, 1550 (9th Cir. 1992) ("Because trial judges have broad discretion both to determine relevance and to determine whether prejudicial effect or other concerns outweigh the probative value of the evidence, we will find a [constitutional] violation only if we conclude that the trial court abused its discretion.").

  **B. There Is No Evidentiary or Legal Support for the Conclusion That Sgt. Bien Made a "Knowingly False" Statement, and Admission of that Evidence Would Create a Distracting, Time-Consuming, and Prejudicial Mini-Trial—the Court Should Find that Judge Boulware's Order Is Not Admissible in Qazi's Trial and that the Government is Not Obligated to Disclose it to Qazi**

Judge Boulware's order finding that Sgt. Bien made a "knowingly false" statement should not be admissible in Qazi's trial. First, for the reasons articulated in the Government's motion to amend, the facts at the evidentiary hearing did not demonstrate that Sgt. Bien—who neither authored nor swore out the telephonic search warrant—made a "knowingly false" statement. *See* ECF No. 65 at 4:17-7:12. Even if Sgt. Bien was the author of the warrant, a "knowingly false" statement was never made—the innocent, good faith inclusion of incorrect information conveyed by other officers about a matter that was not material does not arise to a "knowingly false" statement. *See generally id.* And the detectives' decision, in the heat of an investigation, to not contact the justice of the peace to correct this innocently-included, immaterial fact also does not rise to the

level of making a "knowingly false" statement.[1] Finally, it appears that Sgt. Bien who neither authored nor swore out the warrant, was collaterally tainted by the order due to his involvement in the larger investigation. There is no impeachment material to disclose because: (1) the detectives did not make a "knowingly false" statement; and (2) even if there was such a statement, it was not Sgt. Bien who made it.

Assuming further that the *Chavez* order constituted some type of impeachment material, it should not be admissible in Qazi's trial. Introduction of the order is guaranteed to generate a distracting, confusing, unfairly prejudicial, and time-consuming mini-trial. First, to rehabilitate Sgt. Bien, the Government would in fairness need to be permitted to introduce the many facts about the *Chavez* case, including: the immateriality of the statement to the warrant's probable cause showing; the fact that the incorrect information was innocently included based on information relayed by other officers; Sgt. Bien's role in the warrant drafting and swearing relative to Det. Hodson's role; the facts and circumstances supporting probable cause for the warrant; and the fact

---

[1] Judge Boulware's order is internally contradictory as to whether the incorrect statement was material. The order states that "the false statement contained in the warrant application was not essential to the finding of probable cause." ECF No. 55 at 19:16-17. But in the next sentence, the order implies that Detective Hodson's statement was "material." *Id.* at 19:18-19 ("Finally, to the extent Chavez contends that Hodson made other material misrepresentations in his affidavit, the Court finds that Chavez has not established by a preponderance of the evidence that any of these statements constituted knowing or intentional falsehoods or statements made with reckless disregard for the truth, nor has he established that they were essential to the probable cause determination."). The order is contradictory because the statement cannot be "material" under the law if it did not affect the probable cause determination. *See Miller v. Prince George's Cty., MD*, 475 F.3d 621, 628 (4th Cir. 2007) ("[I]n order to violate the Constitution, the false statements or omissions must be 'material,' that is, 'necessary to the [neutral and disinterested magistrate's] finding of probable cause.' [*Franks v. Delaware*, 438 U.S. 154, 155-156, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978)]. To determine materiality, a court must 'excise the offending inaccuracies and insert the facts recklessly omitted, and then determine whether or not the 'corrected' warrant affidavit would establish probable cause.'" (citations omitted)); *Sherwood v. Mulvihill*, 113 F.3d 396, 399 (3d Cir. 1997) ("Under *Franks*, falsehoods are deemed material to the finding of probable cause if the affidavit, "with the ... false material set to one side ... is insufficient to establish probable cause." *Franks*, 438 U.S. at 156, 98 S.Ct. at 2676.").

6

that Judge Boulware nevertheless found the warrant supported by probable cause. Only with those tools would the Government be afforded its fair and justifiable chance to rehabilitate the credibility of a crucial witness.

Such a process would guarantee that the jury will be both distracted and delayed from fulfilling its actual function in Qazi's trial. A detour into the facts and circumstances of an unrelated search warrant in an unrelated felon-in-possession case would unduly distract the jury from hearing about the evidence and facts in Qazi's case. *See, e.g.*, *United States v. Richardson*, 793 F.3d 612, 628-629 (6th Cir. 2015), *cert. granted, judgment vacated on unrelated grounds*, 136 S. Ct. 1157, 194 L. Ed. 2d 164 (2016).[2] Additionally, to have Sgt. Bien's credibility attacked on such a questionable basis would unfairly prejudice the Government at trial where there are no questions about Sgt. Bien's conduct in Qazi's case—Sgt. Bien actually *was* the warrant affiant in this case and no colorable question has been raised about the veracity or accuracy of that

---

[2] ("In this case, the district court determined that the judicial opinion Richardson sought to introduce on cross-examination: (1) was the type of evidence intended to be precluded by Rule 608(b), (2) was not clearly probative of the witness' character for truthfulness, (3) would likely confuse or mislead the jury, and (4) could prejudice the government. The district court did not abuse its discretion in reaching these conclusions. As a preliminary point, a judicial opinion making a credibility determination does indeed appear to be the type of extrinsic evidence disallowed by Rule 608(b). *See United States v. Taylor*, 471 Fed.Appx. 499, 521 (6th Cir. 2012) (opining that an opinion written by a district judge "may not be admitted as extrinsic evidence" under Rule 608(b)); *United States v. Mendez*, 303 Fed.Appx. 323, 325 (6th Cir. 2008) (finding that official reports of a witness interview were inadmissible under Rule 608(b) as extrinsic evidence of collateral matters). []Moreover, the district court was within its discretion in determining both that the cross-examination sought by Richardson would likely lead to jury confusion and that it lacked probative value. The district court's credibility determination in the 2002 case was generalized as to both testifying officers and seemed to relate to Officer Herzog primarily with respect to the question of whether a defendant urinated in an alley in a particular manner at a particular time of night. It was reasonable for the district court in this case to conclude that the previous district judge's incredulity regarding Officer Herzog's testimony was not probative of his general character for truthfulness. Additionally, given the context and nature of this credibility assessment, if the 2002 case were raised on cross-examination, the jury would need to be presented with detailed testimony regarding an entirely collateral matter in order to assess its probative value. This type of collateral "mini-trial" is precisely what Rule 608(b) is intended to prevent, and why the decision of whether or not to permit such cross-examination should be, and is, within the district court's discretion.").

warrant. In other words, the probative value of the order is scant relative to the incendiary prejudicial impact it would have if admitted in Qazi's trial. *See id.* For these reasons, even if the Court believes that the *Chavez* finding could constitute impeachment material as to Sgt. Bien, it should still be wholly excluded under Federal Rule of Evidence 403.[3]

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

---

[3] Because the Government does not believe that the *Chavez* order constitutes impeachment material, this motion is filed on an *ex parte* basis. The Government has not brought Judge Boulware's order to Qazi's attention. The order is publicly available in the PACER ECF system, and is also reported and available on Westlaw (and presumably Lexis). *United States v. Chavez*, 111 F. Supp. 3d 1131 (D. Nev. 2015), *rev'd in part*, 673 F. App'x 754 (9th Cir. 2016). The Government is unaware of whether Defendant Qazi is already familiar with Judge Boulware's order in the *Chavez* case. The order is easily found by searching Sgt. Bien's name, "Frank Bien," in Westlaw; that search brings up *Chavez* order as the second of six case results. The first result is an order from this case involving Qazi.

### III. Conclusion

WHEREFORE, after consideration of the included facts, points, authorities, exhibits, and arguments, the United States respectfully requests that this Court GRANT the *Ex Parte* Motion *in Limine* to Preclude Introduction of Findings Made as to Sergeant Frank Bien in *United States v. Frank Chavez*, Case No. 2:15-cr-00035-RFB-CWH, and order that:

(1) the order and findings as to Sgt. Bien in *United States v. Frank Chavez*, Case No. 2:15-cr-00035-RFB-CWH are wholly inadmissible in Qazi's trial; and

(2) the Government is not obligated to disclose or draw Qazi's attention to the findings made as to Sgt. Bien in *United States v. Frank Chavez*, Case No. 2:15-cr-00035-RFB-CWH.

DATED this 13th day of July, 2018.

    Respectfully submitted,

    DAYLE ELIESON
    United States Attorney

    //s//

    ALEXANDRA MICHAEL
    PATRICK BURNS
    Assistant United States Attorneys

# CERTIFICATE OF SERVICE

I certify that I am an employee of the United States Attorney's Office. A copy of the foregoing **GOVERNMENT'S EX PARTE MOTION IN LIMINE TO PRECLUDE INTRODUCTION OF FINDINGS MADE AS TO SERGEANT FRANK BIEN IN UNITED STATES V. FRANK CHAVEZ, CASE NO. 2:15-CR-00035-RFB-CWH** was sent to Defendant Qazi via United States mail addressed to:

    Mr. Omar Qazi #49760048
    NSDC 2190 East Mesquite Avenue
    Pahrump, Nevada, 89060

and on stand-by counsel Telia Williams, Esq., via electronic service by ECF, on July 17, 2018.

**DATED** this 17th day of July, 2018.

                                      //s// Patrick Burns
                                      _____
                                      PATRICK BURNS
                                      Assistant United States Attorney