DAYLE ELIESON
United States Attorney
ALEXANDRA MICHAEL
Assistant United States Attorney
501 Las Vegas Boulevard South, Suite 1100
Las Vegas, Nevada 89101
(702)  388-6336/Fax: (702) 388- 6020
Alexandra.m.michael@usdoj.gov
*Representing the United States of America*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

### -oOo-

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | **Case No.: 2:15-cr-00014-APG-VCF** |
| **Plaintiff,** | |
| **vs.** | **GOVERNMENT'S SUPPLEMENTAL RESPONSE IN OPPOSITION TO DEFENDANT QAZI'S "MOTION FOR RELEASE PENDING SENTENCING" [ECF No. 529]** |
| **OMAR QAZI,** | |
| **Defendant.** | |

The United State of America, by and through DAYLE ELIESON, United States Attorney, and ALEXANDRA MICHAEL, Assistant United States Attorney, hereby respectfully submits this timely Government's Supplemental Response in Opposition to Defendant Qazi's "Motion for Release Pending Sentencing" [ECF No. 529].

...

...

...

1

## POINTS AND AUTHORITIES

### I.        Relevant Procedural Background

On January 20, 2015, Defendant Omar Qazi (Qazi) was charged in a single count indictment with being a Felon in Possession of a Firearm.[1]  On February 24, 2015, Qazi made his initial appearance and was ordered detained pending trial.[2]  Qazi has remained in custody since that date.  On August 1, 2018, Qazi was found guilty, after a jury trial, of being a Felon in Possession of a Firearm, as charged in the Indictment.[3]  After the guilty verdict, Qazi was remanded to custody pending sentencing.[4]  On August 7, 2018, Qazi filed a Motion for Release Pending Sentencing (Motion).[5]  On August 21, 2018, the Government filed a Response in Opposition to Qazi's Motion.[6]  On August 28, 2018, the Court held a Motion hearing and requested supplemental briefing from the Government.[7]   Sentencing is currently set for November 15, 2018 at 9:00am.[8]

### II.       Argument

#### A. Qazi Has Not Met The Legal Standard For Re-Opening His Detention Hearing

A detention hearing may be reopened only "if the judicial officer finds that information exists that was not known to the movant at the time of the hearing," and

---

[1] ECF No. 1.
[2] ECF No. 13.
[3] ECF No. 523.
[4] ECF No. 527.
[5] ECF No. 529.
[6] ECF No. 534.
[7] ECF No. 537.
[8] ECF No. 527.

that the information "has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of the person as required, and the safety of any other person and the community." 18 U.S.C. § 3142(f).  Qazi's Motion argues that his anticipated sentencing guidelines range will be twenty-one (21) months to twenty-seven (27) months in custody.  Qazi proposes his base offense level will be fourteen (14) and his criminal history category is III.  Qazi submits he has already served well in excess of that time in custody, to date approximately forty-two (42) months.[9]  At the Motion hearing on August 28, 2018, the Court expressed concern that the Government's position was if Qazi has been in custody well in excess of his potential sentence, that fact would not warrant re-opening his detention hearing nor support his release pending sentencing.  That is not the case.  The Government's position is that Qazi's anticipated guidelines sentencing range is well beyond the amount of time he has already been in custody[10], that his argument that he had already exhausted the term of his potential sentence had already been raised in a prior motion to reopen detention, had been addressed and rejected by the Court, and that therefore, Qazi's Motion did not present any new and material information to warrant re-opening his detention hearing under 18 U.S.C. § 3142(f) nor did it support release pending sentencing under 18 U.S.C. § 3143(a) and 18 U.S.C. § 3142(g).  The Government respectfully submits this supplemental brief addressing its position in greater detail.  Qazi, in his Motion, admits

---

[9] ECF No. 529 at 2.
[10] The Government anticipates a guidelines range of 63 – 78 months in custody prior to any potential additional two level enhancement for Obstructing or Impeding the Administration of Justice under § 3C1.1 which would result in a guidelines range of 78 – 97 months in custody.

that he is not presenting new information nor a new argument.[11]  Qazi made this same argument in previous filings[12] on April 4, 2017 and April 12, 2017, after he had raised the issue during the Motion hearing in front of Magistrate Judge Leen (Judge Leen) on March 23, 2017.[13]  At the conclusion of the Motion hearing, Judge Leen requested additional briefing from the parties to address this and other issues.[14]  Throughout the pendency of this case, Qazi has repeatedly re-filed arguments previously presented and decided by this Court.  Qazi's current motion is no different.  Qazi referenced the Government's concession in *United States v. Barlese* along with his other arguments regarding his Nevada felony conviction for Battery with Substantial Bodily Harm conviction not qualifying under the elements clause of USSG § 4B1.2(a)(1) and the modified categorical approach with referenced exhibits specifically on April 4, 2017.[15]  Judge Leen's Order (Order) indicated her potential concern about the amount of time that Qazi had been in custody, approximately twenty-five (25) months at the time of the Motion hearing, in relation to his potential sentencing guidelines range and given the pending interlocutory appeal.[16]  Judge Leen requested supplemental briefing in order to consider Qazi's due process arguments and the parties positions concerning the length of his current and potential future detention.[17]  Judge Leen's Order summarized Qazi's arguments from his supplemental response where he submitted his underlying

---

[11] ECF No. 529 at 2.
[12] ECF No. 308 and ECF No. 315.
[13] ECF No. 305.
[14] *Id*.
[15] ECF No. 308 at 5-7.
[16] ECF No. 325 at 16-17.
[17] ECF No. 325 at 16-17.

conviction would not qualify as a crime of violence. [18]  Judge Leen's Order also found that at least one circuit had held that the length of current or potential future detention cannot be considered in deciding whether to reopen a detention hearing.  *United States v. Hare,* 873 F.2d 796 (5th Cir. 1989). [19]   Nevertheless, Judge Leen conducted an evidentiary hearing, considered the parties arguments and reviewed the parties filings, and ultimately found that "Qazi has not established that there is new information that has a *material* bearing on whether conditions of release can be fashioned to reasonably assure his appearance and the safety of the community." [20]   The Government submits the same is true of Qazi's most recent Motion and it should therefore be denied.

### B. Qazi's Nevada Conviction For Battery With Substantial Bodily Harm Qualifies As A Crime of Violence Under The Sentencing Guidelines

#### 1.  USSG § 2K2.1

On August 1, 2018, Qazi was found guilty of being a Felon in Possession of a Firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). [21]  The applicable United States Sentencing Guidelines (USSG) section for sentencing is 2K2.1.  Section 2K2.1(a)(4)(A) directs a sentencing court to assign a base offense level of twenty (20) to a defendant convicted of unlawful possession of a firearm if the defendant committed that offense "subsequent to sustaining one felony conviction of either a crime of violence or a controlled substance offense." "Crime of violence" is defined in USSG §

---

[18] ECF No. 325 at 14.
[19] ECF No. 325 at 17.
[20] ECF No. 325 at 19.
[21] ECF No. 523.

4B1.2(a) as "any offense under federal or state law, punishable by imprisonment for a term exceeding one year," that—

> (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or
>
> (2) is murder, voluntary manslaughter, kidnapping, aggravated assault, a forcible sex offense, robbery, arson, extortion, or the use or unlawful possession of a firearm described in 26 U.S.C. § 5845(a) or explosive material as defined in 18 U.S.C. § 841(c).

USSG § 4B1.2(a)(1) is referred to as the elements clause and USSG § 4B1.2(a)(2) is referred to as the enumerated offenses clause. To qualify as "physical force" under the elements clause, the force must be "force capable of causing physical pain or injury to another person." *Cf. Johnson v. United States*, 559 U.S. 133, 140 (2010).

### 2.   *The Categorical Approach and Modified Categorical Approach*

Courts must "look beyond the label" of the crime and consider its elements to determine if it is a qualifying predicate. *United States v. Rivera-Muniz*, 854 F.3d 1047, 1049 (9th Cir. 2017). Thus, courts apply the "categorical approach" by comparing the elements of the statute of conviction with the elements of the "generic" predicate crime. *Id.; see also, e.g., Descamps v. United States*, 133 S. Ct. 2276, 2281 (2013) (discussing categorical approach in ACCA context); *Mathis v. United States*, 136 S. Ct. 2243, 2248 (2016) (same). If the prior conviction has the same or narrower elements as the generic offense, it may serve as a predicate for the enhancement. *Descamps*, 133 S. Ct. at 2281. Where an overbroad statute of conviction includes multiple offenses by listing "one or more elements of the offense in the alternative," courts employ the "modified categorical approach" and consult certain case documents "to determine which alternative formed the basis of the defendant's prior conviction." *Id*. This allows

courts to "compare the elements of the crime of conviction (including the alternative element used in the case) with the elements of the generic crime." *Id.* When the crime of conviction has only a single, "indivisible" set of elements, the modified categorical approach does not apply. *Id.* at 2282. Rather, courts should "focus solely on whether the elements of the crime of conviction sufficiently match the elements of [the] generic [crime], while ignoring the particular facts of the case." *Mathis*, 136 S. Ct. at 2248. When a sentencing court encounters an overbroad statute of conviction containing alternative phrases, the first task "is thus to determine whether its listed items are elements or means." *Id.* at 2256. If they are elements, the court should apply the modified categorical approach to determine which enumerated alternative element comprised the defendant's conviction and then compare the elements to the generic offense. *Mathis*, 136 S. Ct. at 2248. If, on the other hand, they merely describe alternate factual means of committing a crime, the court may not consider which factual alternative led to a conviction. *Id.* To make this elements/means determination, a sentencing court should look to "authoritative sources of state law," including first and foremost "a[ny] state court decision definitively answer[ing] the question." *Id.* at 2256. Absent such a decision, a sentencing court can examine the statute itself for clues about the alternatives (e.g., alternatives with different punishments are elements whereas illustrative examples are means). *Id.* If state law lacks a clear answer, judges can "peek at the [record] documents . . . for the sole and limited purpose of determining whether the listed items are elements of the offense"

(e.g., how indictment and jury instructions were drafted). *Id.* at 2256-57 (internal

quotation marks and alterations omitted).

### 3.  *Nevada Battery with Substantial Bodily Harm*

Qazi's underlying conviction is Battery With Substantial Bodily Harm (Category

C Felony), in violation of Nevada Revised Statue (NRS) 200.481(2)(b).[22]  Nevada's

battery statute, NRS 200.481, provides, in relevant part:

> 1. As used in this section:
>
>> (a) "Battery" means any willful and unlawful use of force or violence upon the person of another.
>
> ...
>
> 2. Except as otherwise provided in NRS 200.485, a person convicted of a battery, other than a battery committed by an adult upon a child which constitutes child abuse, shall be punished:
>
> ...
>
>> (b) If the battery is not committed with a deadly weapon, and either substantial bodily harm to the victim results or battery is committed by strangulation, for a category C felony as provided in NRS 193.130.[23]

---

[22] ECF No. 308 at 21 – 30 (BATES 51 – 60) and Gov. Ex. #1 (BATES 168 – 186) includes Guilty Plea Agreement, Amended Information Transcript from Guilty Plea, and Judgement of Conviction.

[23] Nevada case law suggests that NRS 200.481(2)(b) is divisible as between battery resulting in substantial bodily harm and battery by strangulation. *See Villa v. State*, No. 67568, 2016 WL 4159472, at *1 (Nev. July 28, 2016) (rejecting defendant's claim that the state filed multiplicitous charges, noting that "domestic battery (strangulation) requires strangulation but not substantial bodily harm, and battery causing substantial bodily harm requires substantial bodily harm but not strangulation"). Defendants in Nevada are generally charged and convicted of one or the other. *See, e.g., McCullough v. Nevada*, No. 69684, 2016 WL 7189996, at *1 (Nev. App. Nov. 18, 2016) (defendant convicted of "battery by strangulation"); *De Santiago-Ortiz v. State*, No. 67424, 2016 WL 699867, at *1 (Nev. Feb. 19, 2016) (defendant convicted of "battery causing substantial bodily harm").

This Court need not resolve that question, however, as Nevada battery by strangulation unquestionably has, as an element, the use of physical force against the person of another. *See* NRS 200.481(1)(h) ("'Strangulation' means intentionally impeding the normal breathing or circulation of the blood by applying pressure on the throat or neck or by blocking the nose or mouth of another person in a manner that creates a risk of death or substantial bodily harm.").

### 4. <u>Battery with Substantial Bodily Harm Qualifies As a Crime of Violence Based on Its Elements</u>

In the context of the closely related Armed Career Criminal Act, 18 U.S.C. § 924(e), the Ninth Circuit explained that simple battery—defined to include any "unlawful touching"—would not on its own qualify as a categorical violent felony, because the offense would not in all cases punish conduct that is violent in nature. *United States v. Lawrence*, 627 F.3d 1281, 1286 (9th Cir. 2010), abrogated on other grounds by *United States v. Robinson*, 869 F.3d 933, 937 (9th Cir. 2017).  State statutes that require intentional touching "result[ing] in substantial bodily harm," however, "necessarily require force that go[es] beyond the 'least touching,' and represent 'actual force' that is violent in nature."  *Id.* at 1287 (quoting *United States v. Grajeda*, 581 F.3d 1186, 1192 (9th Cir. 2009)); cf. *United States v. Juvenile Female*, 566 F.3d 943, 948 (9th Cir. 2009) ("[A] defendant charged [with] assault resulting in bodily injury necessarily must have committed an act of force in causing the injury.").

More recently, in *United States v. Guizar-Rodriguez,* No. 16-10507, 2018 WL 3945540 (9th Cir. Aug. 17, 2018*)* the Ninth Circuit held that because a violation of NRS 200.481(2)(e)(1) requires committing a battery 'with the use of a deadly weapon' it is a categorical crime of violence as even the 'least touching' with a deadly weapon or instrument …is violent in nature.  *Id* at *7 referencing *Grajeda*.  The Ninth Circuit also recently in *United States v. Gutierrez*, 876 F.3d 1254, 1256 (9th Cir. 2017), held that federal carjacking qualifies as a crime of violence.  In doing so, the Court reasoned that "[a] defendant cannot put a reasonable person in fear of bodily harm without threatening to use 'force capable of causing physical pain or injury.'"  *Id.* at 1257; *see*

*also United States v. Watson*, 881 F.3d 782, 785 (9th Cir. 2018) ("bank robbery qualifies as a crime of violence because even its least violent form "requires at least an implicit threat to use the type of violent physical force necessary to meet the *Johnson* standard.").

*Guizar-Rodriguez, Gutierrez* and *Watson* are consistent with other Ninth Circuit cases, which have long held that offenses involving substantial bodily harm (or weapons capable of inflicting bodily harm) qualify as crimes of violence under the elements clause. *See, e.g., Camacho-Cruz v. Holder*, 621 F.3d 941, 943 (9th Cir. 2010) (holding that Nevada's assault-with-use-of-a-deadly-weapon statute is a crime of violence because it "requires that the defendant, by using a deadly weapon, intentionally create in another person a reasonable fear of immediate bodily harm"); *Rosales-Rosales v. Ashcroft*, 347 F.3d 714, 717-18 (9th Cir. 2003) (holding that a California statute that prohibits "willfully threaten[ing] to commit a crime [that would] result in death or great bodily injury" is a crime of violence because, on its face, it is an offense "that has as an element the threatened use of physical force against the person or property of another"); *United States v. Calvillo-Palacios*, 860 F.3d 1285, 1291 (9th Cir. 2017) ("in the context of assault statutes, bodily injury entails the use of violent, physical force as *Juvenile Female, Villavicencio-Burruel, Melchor-Meceno, Cabrera-Perez, and Arellano Hernandez* demonstrate").

This precedent mandates the conclusion that Nevada battery with substantial bodily harm qualifies as a crime of violence based on its elements. Nevada defines "substantial bodily harm" as either "[b]odily injury which creates a substantial risk of

death or which causes serious, permanent disfigurement or protracted loss or impairment of the function of any bodily member or organ" or "[p]rolonged physical pain." NRS 0.060. For purposes of the elements clause, the phrase "physical force" means "force capable of causing physical pain or injury to another person." *Johnson*, 559 U.S. at 140. Those two definitions are plainly co-extensive.

In support of his argument, Qazi first points to the Government's Unopposed Motion in *United States v. Barlese* where the parties agreed that a conviction for battery by a prisoner in violation of NRS 200.481(2)(f) was not a crime of violence post-*Johnson*.[24]

NRS 200.481 provides, in relevant part:

(f) If the battery is committed by a probationer, a prisoner who is in lawful custody or confinement or a parolee, without the use of a deadly weapon, whether or not substantial bodily harm results and whether or not the battery is committed by strangulation, for a category B felony by imprisonment in the state prison for a minimum term of not less than 1 year and a maximum term of not more than 6 years.

NRS 200.481(2)(f) describes criminal activity that would constitute a "simple battery" by a prisoner as it includes a battery without the use of a deadly weapon, and does not require substantial bodily harm nor strangulation. A conviction under NRS 200.481(2)(f) is distinguishable from a conviction under NRS 200.481(2)(b) and therefore does not support Qazi's argument.

Qazi next argues that his conviction was under NRS 200.481 generally and Nevada battery alone doesn't qualify as a crime of violence.[25] Qazi then references his

---

[24] *United States v. Barlese*, Case No. 15-10269, 10/13/2015, ID:9714969, DktEntry: 12.
[25] ECF No. 529 at 2.

court documents to include: guilty plea agreement, amended information and judgment of conviction.[26]  All these documents specifically detail the conviction as a felony for Battery with Substantial Bodily Harm and list the underlying criminal activity to include willfully, unlawfully, and feloniously used force or violence upon the person of another, to-wit, LESLIE LANCE, by repeatedly shoving the said LESLIE LANCE, resulting in substantial bodily harm to the said LESLIE LANCE.[27]  The transcript from Qazi's guilty plea colloquy also reflects the same information.[28] [29]  The factual allegations in all of these documents unequivocally show Qazi's conviction was for Battery with Substantial Bodily Harm under NRS 200.481(2)(b) not simple battery.

Qazi then argues the level of force required under NRS 200.481(2)(b) need not be violent.[30]  Qazi references a number of Nevada Supreme Court cases in support of his argument.  Qazi first relies on *Hobbs v. State*, 251 P.3d 177, 179-180 (Nev. 2011).  In *Hobbs*, the Nevada Supreme Court found that intentionally spitting on another constitutes the "use of force or violence" required for a battery under NRS 200.481 in terms of simple battery only, not battery with substantial bodily harm.  As such, that case in inapplicable to Qazi's conviction.  Qazi also relies on *Collins v. State*, 203 P.3d 90 (Nev. 2009). In *Collins*, the defendant struck the victim in the face, knocking him

---

[26] *Id*. and ECF No. 308 at Ex. #5 pages 20 – 30.
[27] Gov. Ex. #1 (BATES 168, 174, 183, and 185)
[28] Gov. Ex. #1 (BATES 183)
[29] The Government would note Qazi's arguments and exhibits in ECF No. 308 include a notarized document from the victim Leslie Lance stating she did not suffer substantial bodily harm.  This document in conjunction with Qazi's calls to the victim and her statements to police after the assault occurred will be utilized by the Government at sentencing to support a two (2) level enhancement for Obstruction or Impeding the Administration of Justice under USSG §  3C1.1.
[30] ECF No. 529 at 3.

unconscious, and then robbed him. *Id*. at 91.  The victim suffered a right temple fracture as a result of trauma, and for weeks experienced dizziness and could not bend over without almost losing consciousness.  *Ibid*.  The Nevada Supreme Court rejected the defendant's claim on appeal that the phrase "prolonged physical pain" is unconstitutionally vague.  It explained that, although "the term 'pain' is necessarily subjective," *id*. at 92, "the phrase 'prolonged physical pain' must necessarily encompass some physical suffering or injury that lasts longer than the pain immediately resulting from the wrongful act," *id*. at 92-93.  The phrase 'prolonged physical pain' has a well-settled and ordinarily understandable meaning—i.e., there must be at least some physical suffering that lasts longer than the pain immediately resulting from the wrongful act." *Collins*, 203 P.3d at 93.  The Nevada Supreme Court in *LaChance v. State*, 321 P.3d 919, 925 (2014) also relied on *Collins* in finding that a victim, who as a result of an assault, was treated at the hospital for hemorrhaging of the ear, multiple contusions and welts along with being immobile for a few days afterward and finally her injuries resulting in permanent shin splints, hearing loss and an inability to sit for long periods all amounted to 'some physical suffering or injury that lasts longer than the pain immediately resulting from the wrongful act' and therefore supported a conviction for domestic battery causing substantial bodily harm.  Both *Collins* and *LaChance* support the Government's position that the level of force required under a violation of NRS 200.481(2)(b) punishes conduct that is violent in nature.

The U.S. Supreme Court defined "physical force" as "force capable of causing physical pain or injury to another person." *Johnson*, 559 U.S. at 140. The Court in

*Johnson* put no further limitation on that definition, and it is not the role of the district court to read such a limitation into the Supreme Court's clear holding.  As the Supreme Court has repeatedly made plain, the categorical approach "is not an invitation to apply 'legal imagination' to the state offense; there must be 'a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime." *Moncrieffe*, 569 U.S. at 191 (quoting *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007)).

A cursory review of Nevada case law provides no support for the contention that convictions for battery with substantial bodily harm result from non-violent conduct. *See, e.g., Wright v. State*, No. 72419, 2017 WL 6804687 (Nev. App. Dec. 26, 2017) (defendant punched victim numerous times, breaking bones in the victim's face and bruising his brain); *McGowan v. State*, No. 71071, 2017 WL 4216455 (Nev. App. Sept. 13, 2017) (victim testified that defendant struck her more than once and she suffered a facial fracture and the loss of a tooth); *Odonnell v. State*, No. 70848, 2017 WL 2334574 (Nev. App. May 24, 2017) (defendant punched and dragged the victim and struck her with a lamp); *Villa v. State*, No. 67568, 2016 WL 4159472 (Nev. July 28, 2016) (defendant punched and choked the victim, causing her to lose consciousness; the compression caused capillaries in the victim's face, eyes, and brain to rupture; and her eye completely turned inward towards her nose, remaining in that impaired condition for more than one week).  Qazi references *Holland v. State*, No 69883, 2017 WL 881951 at *1 (Nev. Ct. App. Feb 24, 2017) in support of his argument but in that case the Court found that evidence to include surveillance video and testimony of a victim at

14

least 60 years of age who was struck and testified to the prolonged pain he felt following the incident fulfilled the elements 200.481(2)(b). Qazi's contention that one can be convicted of battery with substantial bodily harm by a mere unwanted touch is unsupported in law and contrary to statute.[31]

5.   _Battery with Substantial Bodily Harm Is Also a Crime of Violence Under the Enumerated Offenses Clause_

USSG § 2K2.1 defines "crime of violence" to include aggravated assault. Nevada battery with substantial bodily harm also qualifies as a crime of violence because it is a categorical match to that enumerated offense.

Although it does not appear that the Ninth Circuit has had occasion to adopt a generic definition of "aggravated assault," it has quoted the Model Penal Code definition, which includes "attempts to cause serious bodily injury." _United States v. Gomez-Hernandez_, 680 F.3d 1171, 1178 (9th. Cir. 2012) (quoting Model Penal Code § 211.1(a)). The Tenth Circuit has concluded that the generic definition includes "an offense that has an element either the causing of serious bodily injury or the use of a dangerous weapon." _United States v. Gastelum-Laurean_, 370 Fed. Appx. 938, 941 (10th Cir. 2010) (unpublished). Other circuits have adopted similar definitions. _See, e.g., United States v. Morales-Alonso_, 878 F.3d 1311, 1315 (11th Cir. 2018) ("[A]ggravated assault has two essential elements. First, there must be a 'criminal assault.' Second, the assault must be accompanied by either 'the intent to cause serious

---

[31] During the Motion hearing on August 28, 2018, the Government noted that District Court Judge Mahan had ruled that a Nevada conviction for attempted battery with substantial bodily harm did not qualify as a felony crime of violence in _United States v. Fitzgerald_, Case No. 2:17-cr-295-JCM-NJK. That case is currently pending appeal in the Ninth Circuit.

bodily injury to the victim or the use of a deadly weapon.'"); *United States v. Villasenor-Ortiz*, 675 Fed. Appx. 424, 426 (5th Cir.), cert. denied, 138 S. Ct. 128 (2017) ("the two most common aggravating factors are 'the causation of serious bodily injury and the use of a deadly weapon'"); *United States v. Rodriguez*, 664 F.3d 1032, 1036 (6th Cir. 2011) ("Under the Model Penal Code, a defendant is guilty of aggravated assault 'if he (a) attempts to cause serious bodily injury to another, or causes such injury purposely, knowingly, or recklessly under circumstances manifesting extreme indifference to the value of human life; or (b) attempts to cause or purposely or knowingly causes bodily injury to another with a deadly weapon.'"). Qazi's conviction for battery with substantial bodily harm clearly matches these definitions.

Moreover, the guidelines elsewhere define "aggravated assault" to include "a felonious assault that involved serious . . . bodily injury." USSG § 2A2.2 n.1(B). Qazi's conviction for battery with substantial bodily harm qualifies as a felonious assault that involved serious bodily injury; it therefore plainly qualifies as a crime of violence under the definition of that enumerated offense of aggravated assault as it is defined in USSG § 4B1.2(a)(2).[32]

## C. Qazi Has Not Met The Legal Standard For His Release Pending Sentencing

In a case where the Defendant has been found guilty of an offense, 18 U.S.C. § 3143(a) sets forth in relevant part: the judicial officer shall order that a person who

---

[32] While § 2A2.2 n.1's definition for aggravated assault may inform the Court's decision as to the generic definition of that offense for purposes of § 4B1.2, the former adopts a definition of aggravated assault specifically "[f]or purposes of this guideline," i.e., for § 2A2.2, and thus does not directly apply to § 4B1.2.

has been found guilty of an offense and who is awaiting imposition or execution of sentence, be detained, unless the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b) or (c). Now that Qazi has been found guilty, it is his burden to overcome this legal standard. Judge Leen's Order from June 8, 2017, found that there were no conditions or combination of conditions that would reasonably assure Qazi's appearance or the safety of the community.[33] If the Court is inclined to consider Qazi's release pending sentencing the Government submits the following proffer in support of its position that Qazi should be detained pending sentencing.[34] Under 18 § 3142(g) the Court must consider various factors in deciding whether to release or detain a defendant. Those factors include: the nature and circumstances of the offense charged, the weight of the evidence against the defendant, the history and characteristics of the defendant, and whether at the time of the offense the defendant was on probation, parole or any other release.

The nature and circumstances of the offense charged are that Qazi was driving a vehicle that contained both a loaded firearm he was prohibited from possessing and narcotics he intended to sell.[35] Qazi admitted to possessing the firearm to law enforcement and his DNA was recovered on the gun. Qazi admitted to both his girlfriend

---

[33] ECF No. 325.
[34] The Government respectfully requests leave to make additional arguments and present additional evidence if the Court re-opens Qazi's detention hearing.
[35] Gov. Ex. #2 – jail calls ending in 2200 (2:30 – 4:00) made on January 6, 2015 and 9467 (2:45 – 4:10 and 7:45 – 9:00) made on January 13, 2015.

and his mom that he had the gun and the drugs in the car.[36]  Qazi also was surprised when law enforcement found the items given they were hidden in the car.[37]  This factor weighs in favor of detention.

The next factor is the weight of the evidence against the defendant.  Qazi has been found guilty after a jury trial of the offense charged in the indictment so this factor weighs in favor of detention.

The next factor is the history and characteristics of the defendant.  Qazi has no significant ties to Las Vegas beyond his mother.  Qazi resided with his mother, Gloria Qazi, in Las Vegas, Nevada, prior to be arrested on January 6, 2015.  The pre-trial services report indicated Qazi would reside with his mother if he is released pending sentencing.  The Government has great concerns with this given prior to his arrest, Qazi would keep his gun and drugs at her residence.[38]  Qazi was also using her car for the purpose of delivering drugs.  Additionally, Qazi kept his stash of drugs at his mother's residence and while in custody he asked his girlfriend Crystal Clemenza to get his "stash" of drugs from his mother's house along with baggies and a scale so she could package and sell the drugs to pay for his release from custody.[39]  These actions constitute a separate federal offense of Use of a Communication Facility to commit/Facilitate a Crime in violation of 21 U.S.C. § 843.  Crystal Clemenza reported back to Qazi how much money she was trying to get in exchange for selling Qazi's narcotics.  Qazi also mentioned

---

[36] Gov. Ex. #2 – jail calls ending in 8453 and 8981 made on January 6, 2015
[37] Gov. Ex. #2 – jail calls ending in 8453 and 8981 made on January 6, 2015
[38] Gov. Ex. #2 jail call ending in 2200 (2:30 – 4:00) made on January 6, 2015.
[39] Gov. Ex. #2 jail calls ending in 2200 (2:30 – 4:00) made on January 6, 2015 and 9467 (2:45 – 4:10 and 7:45 – 9:00) made on January 13, 2015.

that he believed his mother might still have his "glock".[40]   Additionally, pre-trial services, on August 28, 2018, had not been able to reach Qazi's mother to verify the residence as an option nor had they conducted a home visit.  For all of the above reasons the Government submits that is not a suitable residence should the Court decide to release Qazi pending sentencing.

Qazi has been unemployed since 2009.  Qazi has a known mental health history and substance abuse history.  Qazi also has a significant criminal history to include: 2006 misdemeanor conviction for obstructing public officer, 2007 misdemeanor conviction for carrying a concealed weapon, 2009 gross misdemeanor conviction for pandering, 2009 misdemeanor conviction for petty larceny, three (3) separate 2009 misdemeanor convictions for battery, 2009 misdemeanor conviction for attempted theft, 2011 misdemeanor conviction for battery domestic violence, 2011 felony conviction for battery with substantial bodily harm and 2014 misdemeanor DUI conviction.  Qazi was then arrested for having a gun and drugs (marijuana and methamphetamine) on January 6, 2015.  Once he was released on that charge, he was again arrested for having drugs (methamphetamine) on February 8, 2015.[41]

Qazi's jail calls reveal his girlfriend was selling his drugs in order to get him out of custody on the January 6, 2015 charges and once released he continues his criminal activity and is again arrested days later with drugs that he possessed with the intent to

---

[40] Gov. Ex. #2 jail call ending in 9467 (7:45 – 9:00) made on January 13, 2015.
[41] Gov. Ex. #5.

sell.[42]  Qazi poses a significant risk of reoffending if released.  Qazi's criminal history/ criminal activity reveals a propensity for physical violence, most concerning are the underlying facts regarding the 2010 attack where he physically assault the mother of his child and her thirteen year old daughter.[43]  Qazi's history also shows he possesses weapons and narcotics with the intent to sell.  Qazi's disciplinary record while in custody also shows a number of violations and disciplinary actions to include: Failure to follow verbal or posted rules in July 2015, Assault in July 2015, Hindering an employee in performance of duty in July 2015, Failure to follow verbal or posted rules in August 2015, Unauthorized use of mail or telephone in August 2015, Failure to follow verbal or posted rules in May 2016, Failure to follow verbal or posted rules in March 2017 (3 separate times), Assault in July 2018, and Insurrection in July of 2018.[44]  Finally, Qazi has not abided by the Court's orders or instructions throughout this case.  The most prevalent example was his violent actions and threatening statements made on March 24, 2017 in front of Judge Leen and towards the AUSA.[45]  For all of these reasons Qazi should remain detained pending sentencing.

The Government anticipates Qazi's sentencing guidelines range without a two-level enhancement for Obstruction of the Administration of Justice under USSG 3C1.1 would be at least sixty-three (63) to seventy-eight (78) months in custody.[46]  Qazi does

---

[42] Gov. Ex. #2 jail call ending in 3727 (2:20 – 2:35, 4:06 – 4:40, 5:30 – 6:55) made on February 8, 2015 and Gov. Ex. #5 – police paperwork.

[43] Gov. Ex. #3 – police paperwork.

[44] Gov. Ex. #4 – Disciplinary history

[45] Gov. Ex. #2 – Audio from the end portion of the Motion hearing.

[46] USSG § 2K2.1(a)(4)(A) – base offense level of 20 and a +4 enhancement for in connection with another felony offense under USSG § 2K2.1(b)(6)(B) for an adjusted offense level of 24.  The Government intends

not dispute the proposed criminal history category of III given he argues his guidelines sentencing range, assuming a base level of fourteen (14), would be twenty-one (21) to twenty-seven (27) months in custody.[47]  The Government submits Qazi's Motion should be denied and he should remain detained pending sentencing.

## II.   Conclusion

WHEREFORE, after consideration of the included facts, points, authorities, exhibits, and arguments, the United States respectfully requests that this Court DENY the Qazi's ""Motion for Release Pending Sentencing" [ECF No. 529].

DATED this 31st day of August, 2018.

Respectfully submitted,

DAYLE ELIESON
United States Attorney

//s//

ALEXANDRA MICHAEL
Assistant United States Attorney

---

to submit a sentencing memorandum, after reviewing the PSR, that will address its position regarding the enhancements under USSG § 2K2.1(b)(6)(B) and USSG § 3C1.1.
[47] ECF No. 529 at 1.

21

1

2

3

4

**CERTIFICATE OF SERVICE**

5       I certify that I am an employee of the United States Attorney's Office. A copy of

6  the foregoing **GOVERNMENT'S SUPPLEMENTAL RESPONSE IN OPPOSITION**

7  **TO DEFENDANT QAZI'S "MOTION FOR RELEASE PENDING SENTENCING"**

8  **[ECF No. 529]** was sent to Defendant Qazi via Fedex Trackin Number # 7730 9210 7231

   (overnight) addressed to:

9       Mr. Omar Qazi #49760048

10       NSDC 2190 East Mesquite Avenue

        Pahrump, Nevada, 89060

11

12  and on stand-by counsel Telia Williams, Esq., via electronic service by ECF, on August

    31, 2018.

13       **DATED** this 31st day of August, 2018.

14

15                                              / s / Alexandra Michael

                                         _____

16                                          ALEXANDRA MICHAEL

                                            Assistant United States Attorney

17

18

19                                              22