Telia U. Williams, Esq.
Nevada Bar No. 9359
Law Office of Telia U. Williams
10161 Park Run Dr., Ste. 150
Las Vegas, Nevada 89145
Tel: (702) 835-6866
telia@telialaw.com

*Attorney for defendant*
*Omar Qazi*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No.: 2:15-cr-00014-APG-VCF |
| Plaintiff, | |
| vs. | |
| OMAR QAZI, | **DEFENDANT'S SENTENCING MEMORANDUM** |
| Defendant | |

Certification: This memorandum is timely filed.

Defendant Omar Qazi, through undersigned counsel, submits this Sentencing Memorandum under seal[1] for the Court's consideration and requests a sentence, as calculated and reviewed pursuant to 18 U.S.C. §§ 3553(a) and 3661, that is sufficient but not greater than necessary to achieve the statutory goals of sentencing.

DATED this 8th day of November, 2018.

LAW OFFICE OF TELIA U. WILLIAMS

By: _____
Telia U. Williams, Esq.
*Attorney for Omar Qazi*

**MEMORANDUM**

*1.    Nature and Circumstances of the Offense*

Nearly four years ago, on January 6, 2015, Omar Qazi was stopped by the police while driving out of the area of his apartment complex. Mr. Qazi was found to be speeding and/or failing to yield to a police officer in a marked patrol vehicle. According to the officer, he could smell marijuana from the vehicle, and thereafter conducted a search of Mr. Qazi's vehicle based on probable cause. Incident to the search, Mr. Qazi was found to have in his possession (by way of having control of the vehicle), a firearm, to wit, a Smith and Wesson .22 caliber revolver, with serial number M37231. Though he declined to provide consent to the police to search his vehicle, (which was overcome by the probable cause of the smell of marijuana, in any case), in every respect Mr. Qazi was respectful and cooperative with the police. Eventually, the police also found three "baggies" of marijuana, and two of methamphetamine. Mr. Qazi was taken into state custody. On January 20, 2015, Mr. Qazi was indicted in this court for a single count of Felon in Possession of a Firearm.[2] He was transferred to federal custody, on or near February 24, 2015, where he has remained until now. On August 1, 2018, Mr. Qazi was found guilty of the charge by an unanimous jury.

*2.    Mr. Qazi's History and Characteristics*

There are twenty-eight offenses that United States Probation has identified in Mr. Qazi's Pre-Sentence Report. Undoubtedly, Mr. Qazi has a storied criminal history going back to the age of 18. To be clear, not all of it is serious. However, fully 24 of the 28 offenses listed in his criminal convictions (going across 12 pages) carry only "0" or "1" point(s).

These include 18 convictions for:

---

[2] *See* 18 U.S.C. § 922(g)(1) and 18 U.S.C. § 924(a)(2).

--Illegal Parking (paragraphs 30, 31, 35, 36, 37, 38, 42, 48, 51, 52)

--Speeding & Miscellaneous Traffic (paragraphs 47, 49, 50, 53, 54, 55, 56, 57)

Each of the foregoing garnered "0" points.

These also include two misdemeanor convictions for carrying a concealed weapon that garnered "1" point each (paragraphs 33 and 34).

Two of the rest of Mr. Qazi's offenses are also non-violent, for attempted pandering, and attempted theft (paragraphs 39 and 44). Each of these garnered "2" points each.

One misdemeanor battery (domestic violence), earned "2" points, as well.

But the only "3" point offense, which comprises the lion's share of Mr. Qazi's criminal history points, consist of the hotly contested "Battery with Substantial Bodily Harm" (see paragraph 46) when he was twenty-two years old.

Mr. Qazi submits that despite the relatively high number of criminal history points that all of the foregoing add up to, he has not had significant enough criminal history, relatively speaking, to truly merit being in Criminal History Category V of the Sentencing Guidelines. His criminal history points tend to over-represent his criminal history, consisting as it does of only one felony. (All the rest of Mr. Qazi's criminal convictions are for misdemeanors.) It is not often the case that a criminal defendant in this court would land in the second highest criminal history category who has only managed to be convicted of a sole felony, and one for which the defendant only spent two years in prison.

Inasmuch as Mr. Qazi's criminal history is largely non-serious, non-violent (even leaving aside for the moment the "crime of violence" issue involving his only felony), and consisting overwhelmingly of misdemeanors, and of those, the vast majority are traffic offenses, the court should disregard the technical calculation of Mr. Qazi's criminal history landing him in the "V"

category. Category V is typically where the most serious offenders, with a long history of serious offenses land. Instead, Mr. Qazi requests that he be placed in Category "III," which, being the category in which moderate offenders, such as he, would most often be represented. With a Category "III," Mr. Qazi's guidelines range would significantly and reasonably shift downward.

Finally, though clearly prohibited for him to possess, it is still important to note that Mr. Qazi was not using the firearm in a violent way, nor to facilitate a crime.

Certainly, it is true, that Mr. Qazi is "no stranger to the criminal justice system." But any characterization that Mr. Qazi has an unequivocal propensity towards "violent crimes" is not substantiated by his criminal record.

3. ***Mr. Qazi's 2010 Battery with Substantial Bodily Harm Should Not Be Used to Enhance His Sentence, Nor for "Drug Trafficking" or "Obstruction of Justice"***

Mr. Qazi should not be subject to an enhancement for substantial bodily harm. This issue has been well-litigated, and thus, will not be treated in any depth in this memorandum. However, the arguments presented in Mr. Qazi's motions to be released pending sentencing, as well as his supplement filed thereto, and any subsequent supplements or memoranda are herein incorporated.

Mr. Qazi objects to the characterization that he was "drug trafficking," or that the amount of methamphetamine and/or marijuana with which he was found when he was stopped by the police was anything other than personal use, and/or the personal use of those in his proximity (i.e., not for sale). Inasmuch as this factual allegation is not one that was proven at trial, the Government bears the burden of proving that Mr. Qazi was using his firearm in connection with drug trafficking, a burden that it will not reasonably be able to bear. As such, Mr. Qazi requests that the four-level enhancement on his PSR be stricken. This would bring his adjusted criminal offense level down to a "24."

Finally, Mr. Qazi objects to the characterization that he suborned perjury for asking his mother to testify in his behalf in any proceedings before this, and/or any other court (including the state court) involving this offense. Indeed, Gloria Qazi is a grown woman, a mother, and a non-English speaker. It is unfathomable that Mr. Qazi should be considered to have coached her in what to say, or even could with any certainty anticipate that what she would have said would have violated her oath to tell the truth regarding what she knew about his offense. Ms. Qazi, a woman who has been battling Stage 4 cancer for the entirety of this litigation, like any mother, is inclined to see events favorable to her son, and it is eminently human for her to have tried to assist in his defense; perhaps, this was part denial, or part gloss. The enhancement for "obstruction" should be stricken. This would bring Mr. Qazi's adjusted criminal offense level down further to "22."

**4.    Mr. Qazi Should Be Accorded Some Points in Reduction for "Acceptance of Responsibility"**

The PSR denies that Mr. Qazi accepted responsibility for his conduct. However, Mr. Qazi maintains that he accepted responsibility for being a felon, and for possessing the firearm, two essential elements of his offense.[3] In fact, Mr. Qazi early in the case signed a stipulation that he was a felon, and closer to trial, as this court well knows, proffered a stipulation that he possessed a firearm. His proffered "unilateral stipulation" was rejected by the government, and only partly granted by the court, but it nonetheless indicates that Mr. Qazi did not intend to put the government to its proof on this element.

Mr. Qazi's intent in going to trial was to contest the element of "interstate commerce." It was a strictly legal contention, and not a factual one. However, slight or marginal the legal viability

---

[3] *See* 18 U.S.C. § 922(g)(1); 18 U.S.C. § 924(a)(2).

of this claim might be, it does not tend to contravene his "acceptance of responsibility." It is true that Acceptance of Responsibility "is not intended to apply to a defendant who puts the government to its burden of proof at trial ***by denying the essential factual elements of guilt***."[4] But Mr. Qazi did <u>not</u> deny the "essential factual elements of guilt." He focused instead on his legal argument that the firearm did not travel in interstate commerce. Indeed, Mr. Qazi tried, without success, to 100% stipulate to the fact that he, a felon, was in possession of a firearm, obviating the government's burden of proving that second element. (The government did not have the burden of proving the first element inasmuch as Mr. Qazi had already entered a joint stipulation with the government regarding it). Mr. Qazi plainly did not put the government to the burden of proving that he was in possession of the firearm, and an assertion that he did is plainly inaccurate.

Mr. Qazi felt that he had no other means to contest the factual contention that the firearm that he possessed passed in interstate commerce except by proceeding to trial on it. But the court can, and should, find that he "accepted responsibility" for his conduct, which he did not deny at trial. The USSG envisions this situation where it says:

> Conviction by trial, however, <u>does not automatically preclude a defendant from consideration for such a reduction</u> [for acceptance of responsibility]. In rare situations a defendant may clearly demonstrate an acceptance of responsibility for his criminal conduct even though he exercises his constitutional right to a trial. This may occur, ***for example***, where a defendant goes to trial to assert and preserve issues that do not relate to factual guilt (e.g. to make a constitutional challenge to a statute or a challenge to the applicability of a statute to his conduct)…[5]

Mr. Qazi presents that "rare situation." He went to trial to challenge that the firearm that he was found with actually passed through interstate commerce, and to challenge perceived government misconduct in relation to stopping him. This is just the kind of situation where he did not deny the principal "factual" aspects of his guilt, but to preserve issues of importance to his legal challenges,

---

[4] *See* <u>United States Sentencing Guidelines Manual</u> (USSG) at §3E1.1(2) (Emphasis added).

[5] *See id.* (Emphases added) (Underlined emphasis added to show that what follows is just an example, and not the only possible illustration of this principle).

however novel or unworkable.  Thus, Mr. Qazi's assertion of his constitutional right to trial should not work against his having accepted responsibility, entitling him to "2" points in mitigation of his adjusted offense level.  This would take Mr. Qazi's adjusted offense level to "20."

**5.     Mr. Qazi Has Made Steps to Change**

The PSR points out some less than stellar conduct on the part of Mr. Qazi while in custody for this offense, and that is undeniable.  However, it does fail to present the full story.  Inasmuch as only Mr. Qazi was there (particularly for the prison incident on the Fourth of July), even though there is a video, it bears remembering that there are "two sides to every story."  Rather than attempt to outline all of what Mr. Qazi believes happened, it would be imperative on the court to allow Mr. Qazi to articulate his side of what happened.  In short, though, Mr. Qazi, a Muslim, had requested a meeting with the former Warden of the Pahrump Detention Center where he is housed, regarding a special meal for the upcoming July 4 holiday.  It is customary for the prison to accord inmates a special holiday meal during such times.  However, those on religious diets, such as Mr. Qazi, do not typically get a different meal during those times.  Mr. Qazi viewed it as having to decide between observing his religious faith as a Muslim, or observing his patriotic celebration as an American.  The former Warden, Jeanne Killian, agreed.  She promised Mr. Qazi, and the group of other inmates in similar position as he, that they would be accorded a special meal on the upcoming holiday, one that would also respect their religious observances (such as no pork products for Mr. Qazi).

However, the prison staff apparently, in flagrant disregard for what Ms. Killian had promised Mr. Qazi and his fellow inmates, gave the men the same meal as they ordinarily received, with the exception of a minor treat.  Mr. Qazi, incensed at what appeared to be an intentional or careless infringement of his religious rights questioned and challenged the meal.  One thing led to another, and eventually Mr. Qazi found himself in a stand-off.  (Again, Mr. Qazi can himself better

articulate what occurred, and what exactly he was promised by the Warden). But most important, Mr. Qazi did not initiate the conflict that led to his being "taken down," pepper-sprayed and physically disciplined by the staff at the facility. Mr. Qazi was emotional and passionate about what he reasonably perceived as a religious slight, at best, and outright discrimination, at worst. It is not surprising that he might have a strong reaction to it. This event, as well as others listed in the PSR, which were not part of criminal offenses for which he was prosecuted, or part of the offense conduct for which he is being prosecuted now, should not be used against him in sentencing him.

Mr. Qazi has been under tremendous pressure in custody. He has been representing himself, has been away from his young son, and his girlfriend. He has been separated from his mother on whom he counts for support, and who has been suffering late-stage terminal cancer. Mr. Qazi was not raised with his father, and is especially close with his mother. As noted herein, he is not one who has an incredibly long or varied criminal history, and has only been in custody for any length of time (2 years), once before. In this case, he has been incarcerated for twice that time. It stands to reason that he has been experiencing some extraordinary pressure that could have led to upsets. This is not necessarily a picture of who Mr. Qazi is on the outside, and the court should treat these reports with a liberal grain of salt.

With that said, Mr. Qazi has responded positively to the critical or constructive feedback concerning these events, and on his own, elected to take an Anger Management Course in the facility. He has successfully completed it, and it is expected that he will employ the skills that he learned in the class in other situations. In addition, Mr. Qazi has been taking college courses to prepare for a career as a paralegal. He has shown tremendous focus and commitment to this task (as he did in graduating from high school). He has done phenomenally in this endeavor, earning

exemplary grades in the course.  Having been away from substance dependency for this period has made him more motivated to achieve his goals, and with greater support (particularly to address any drug addiction), he can be expected to make a contribution to society.  That Mr. Qazi has managed to acquire friendships in custody with the Bundys, for example, shows his ability to "reach across the aisle," so to speak, and to obtain the respect and admiration of others who may not share his socioeconomic background, religion, or ethnicity.

## Conclusion

The Court can reasonably exercise its discretion to impose a lower than 110-month custodial sentence on Mr. Qazi.  Mr. Qazi can be a productive and positive member of society who does a lot of good for himself, his family, and particularly, his minor son.  He wants to do good for his community, and most important, be a good father to his son.  The Sentencing Guidelines "place essentially *no limit* on the number of potential factors that may warrant a departure."[6]  All of the foregoing reasons described herein provide satisfactory reasons for a departure.  The court should depart downward and impose upon Mr. Qazi no more than forty-six (46) months.

Mr. Qazi also respectfully requests that he be considered for the RDAP program.

/ / /

/ / /

/ / /

/ / /

---

[6] *See, e.g., Koon v. United States*, 518 U.S. 81, 106 (1996) (Emphasis added).

Good cause exists for the court to impose no greater sentence upon Mr. Qazi than 46 months (if not fewer). It is therefore requested that the Court depart below the Guideline range, as calculated, and also consider him for the RDAP program.

Dated this 8th day of November, 2018.

Respectfully submitted,

LAW OFFICE OF TELIA U. WILLIAMS

/s/ Telia U. Williams, Esq.
Telia U. Williams, Esq.
Nevada Bar No. 9359
10161 Park Run Dr., Ste. 150
Las Vegas, NV 89145
*Attorney for Defendant*
*Omar Qazi*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on the following date the foregoing Sentencing Memorandum was electronically filed under seal with the Clerk of Court using the CM/ECF system, with a copy sent by email to all counsel of record, and to the United States Probation officer.

Dated: November 8, 2018

/s/ David DaSilva
_____
For the Law Office of Telia U. Williams