Telia U. Williams, Esq.
Nevada Bar No. 9359
Law Office of Telia U. Williams
10161 Park Run Dr., Ste. 150
Las Vegas, Nevada 89145
Tel: (702) 835-6866
telia@telialaw.com
*Attorney for Defendant*
*Omar Qazi*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>vs.<br><br>OMAR QAZI,<br><br>    Defendant | Case No.: 2:15-cr-00014-APG-VCF<br><br>**DEFENDANT'S AMENDED FORMAL OBJECTIONS TO THE PRESENTENCE INVESTIGATION REPORT** |

<u>Certification</u>: These amended objections are timely filed[1].

    Omar Qazi, by and through his attorney of record, Telia U. Williams, Esq., submits these amended formal objections to the Presentence Investigation Report (PSR) for the court's consideration.

    Mr. Qazi previously (by way of his counsel) submitted formal objections to the PSR on October 25, 2018.  *See* ECF No. 549.  However, at his sentencing hearing on November 16, 2018, Mr. Qazi voiced his concern that he had not had sufficient time to go over his objections to the PSR with his counsel.  The court adjourned the hearing in order to permit Mr. Qazi to meet with

---

[1] *See, e.g.*, ECF No. 561.

his counsel in the Marshal's cell block regarding his remaining objections to the PSR.[2] This amended set of formal objections reflects Mr. Qazi's additional proposals.

Dated this 28th day of November, 2018.

Respectfully submitted,

*Telia W*

Telia U. Williams, Esq.
LAW OFFICE OF TELIA U. WILLIAMS
10161 Park Run Drive, Suite 150
Las Vegas, NV 89145
*Attorney for defendant Omar Qazi*

---

[2] Ms. Williams met with Mr. Qazi, along with his paralegal, Sally McDaniels, from 10:25a.m. until 12:00pm.

# OBJECTIONS

1. **Page 3**

Mr. Qazi denies that he has a tattoo with the words, "West Coast 13." Mr. Qazi's tattoo simply says "West Coast." This should be amended.

2. **Paragraph 22:** *Adjustment for Obstruction of Justice*

In paragraph 22, Mr. Qazi is assessed an enhancement for "Obstruction of Justice." *See* page 7. This is presumably due to Mr. Qazi's purported suborning of perjury in having his mother, Gloria Qazi, testify on his behalf in his Preliminary Hearing (while Mr. Qazi was acting pro se), involving the instant offense while it was still being prosecuted in the state court, before his transfer to the federal court. But Mr. Qazi's questioning of his mother was not obviously designed to elicit perjury. *See* Exhibit 3. He asked "establishing" questions regarding the ownership of the vehicle that he was driving at the time of the stop. Mr. Qazi never questioned his mother about the presence of the firearm, and Ms. Gloria Qazi never testifies that the firearm (or the drugs) discovered in the car belonged to someone other than Mr. Qazi. *See* Exhibit 3.

Mr. Qazi denies that he intended to suborn perjury in calling his mother to testify at his probable cause hearing. Mr. Qazi called his mother as a character witness for him (as he had intended to do at his trial). Mr. Qazi could not know, nor did he deliberately elicit, false testimony from his mother about the origin of the firearm and controlled substances.

The assertion that Mr. Qazi has obstructed justice is not borne out by the evidence, and the 2 points assessed for it, should be omitted.

3. **Paragraph 18:** *Criminal History*

Mr. Qazi is assessed a Base Offense Level of "20" (rather than 14) for having been convicted of a crime of violence prior to the commission of the instant offense. Mr. Qazi disputes the interpretation that he committed a "crime of violence," by way of his state court

conviction for Battery with Substantial Bodily Harm.  The court has been treated with substantive and substantial argument on this point.  *See* ECF Nos. 529, 537, 538, 539, 540, and 546.  Counsel does not believe that further argument on this point is useful to the court.

*Nonetheless*, Mr. Qazi would like to excerpt the following additional points in this Formal Objection:

- Under Nevada law and federal law, the term "battery" under §200.481(2)(b) must be used with the same sense as §200.481.  Nevada courts follow the rule that "when the same word is used in different statutes that are similar with respect to purpose and content, the word will be used in the same sense, unless the statutes' context indicates otherwise."  *See Savage v. Pierson*, 123 Nev. 86 (Nev. 2007) (en banc); *National M. Co. v. Dist. Ct.*, 34 Nev. 67 (1911) (noting that if a word is used in different parts of a statute, it will be given the same meaning unless it appears from the whole statute that the Legislature intended to use the word differently).  Given the "normal rule of statutory construction" that "identical words used in different parts of the same act are intended to have the same meaning." *See Sorenson v. Secretary of Treasury*, 475 U.S. 851, 860 (1986) (quotations and other citations omitted).  *And see, S&M Inv. Co. v. Tahoe Regional Planning Agency*, 911 F.2d 324, 328 (9th Cir. 1990) ("When the same word or phrase is used in different parts of a statute, we presume that the word or phrase has the same meaning throughout.")

- The context of §200.481(2)(b) does not indicate that the purpose or content of the battery must be with a heightened amount of violent physical force necessary to satisfy the *Johnson* standard.  Under Nevada law, the felony battery must be interpreted in the same manner as the misdemeanor version because the context of §200.481(2)(b) does not indicate otherwise.  *See Savage*, 123 Nev. at 86.  In other words, the felony version of the battery in this instance does not explain how it must be committed. In fact, the only difference from the misdemeanor version of battery to the felony version is that substantial bodily harm resulted, and it was "not *committed* with a deadly weapon." This indicates that the felony version of the battery can be committed with minimal force, as long as the battery was "not *committed* with a deadly weapon."  On the other hand, if the battery was "*committed* by strangulation," it would be a different matter.

- In *Collins v. State*, the Nevada Supreme Court concluded that the phrase "prolonged physical pain," has a well-settled and ordinarily understood meaning and, as a result, is not unconstitutionally vague.  *See Collins v. State*, 125 Nev. 60, 62 (2009).  In *McNamara v. State*, 377 P.3d 106, 111 (Nev. 2016), the Nevada Supreme Court defined substantial bodily harm as bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ, *or,* prolonged physical

pain. *See id.* <u>McNamara cited *Collins* as follows</u>: "Defining 'prolonged physical pain' in broad terms to 'encompass some physical suffering or injury that lasts longer than the pain immediately resulting from the wrongful act,' but noting that 'by its very nature, the term "pain" is necessarily subjective and cannot be defined further.'" Where a panel confronts an issue germane to the eventual resolution of the case, and resolves it after reasoned consideration in a published opinion, that ruling becomes the law of the circuit, regardless of whether doing so is necessary in some strict logical sense.  Cetacean Community v. Bush, 386 F.3d 1169, 1173 (9th Cir. 2004).

- In *Hobbs v. State*, 127 Nev. 234 (2011), the Supreme Court of Nevada held that "the presence or absence of 'substantial bodily harm' does affect punishment…however, it is not included as an element of simple battery.'" Substantial Bodily Harm is just the enhancement, and does not itself include the elements clause because it does not have "as an element the use, attempted use, or threatened use of physical force against the person of another." Thereby, since the "substantial bodily harm" element only affects the punishment and not the element of the simple battery, it is not a crime of violence.

- In *United States v. Barlese*, the parties (including the Government) agreed that a conviction for battery by a prisoner in violation of NRS 200.481(2)(f) was not a crime of violence post-*Johnson*.  NRS 200.481(2)(f) provides, in relevant part:

    If the battery is committed by a probationer, a prisoner who is in lawful custody or confinement or a parolee, without the use of a deadly weapon, whether or not substantial bodily harm results and whether or not the battery is committed by strangulation, for a category B felony by imprisonment in the state prison for a minimum term of not less than 1 year and a maximum term of not more than 6 years. Battery in §200.481(2)(f) could result in substantial bodily harm and not be a crime of violence where the battery is committed by a probationer, prisoner in lawful custody or confinement or a parolee.

    Mr. Qazi holds that the Government should not insist that a battery under a different subsection (§200.481(2)(b)) would be a crime of violence simply because the battery is not committed by a probationer, prisoner in lawful custody or confinement, or parolee.  If § 200.481(2)(f), which may result in substantial bodily harm is not a crime of violence, then § 200.481(2)(b) is not, either.

- Mr. Qazi believes that his own case indicates that it was not a crime of violence.  He says that no actual substantial bodily harm resulted to the victim, Leslie Lance.  Mr. Qazi wants to point out that he "repeatedly shoved" the victim, as the charging documents indicate, but conclusorily allege that it resulted in substantial bodily harm.  Ms. Lance apparently signed an affidavit in which she did not attest that she

suffered substantial bodily harm. *See* ECF No. 308, Exhibits 5 and 6, at 20-32 (noted at the strong request of Mr. Qazi). Mr. Qazi would like to note:

> One way a petitioner can show the requisite "realistic probability" of prosecution for conduct that falls outside the generic definition is to "point to his own case or other cases in which the state courts in fact did apply the statute in the special (nongeneric) manner for which he argues.
>
> *Chavez-Solis v. Lynch*, 803 F.3d 1004, 1009 (9th Cir. 2015) (citations omitted)

- Mr. Qazi contends that shoving does not constitute the violent physical force necessary to satisfy the elements clause under *Johnson.* Mr. Qazi notes a recent case out of the Ninth Circuit, *United States v. Walton*, 881 F.3d 768, 773-74 (9th Cir. 2018). In that case, apparently, an Alabama robbery conviction based on evidence that the defendant pushed or shoved the victim did not reflect sufficient level of force to satisfy the elements clause for a predicate offense under the Armed Career Criminal Act. Mr. Qazi notes that in United States v. Gardner, 823 F.3d 793 (4th Cir. 2016), the court remanded for re-sentencing a defendant who was found to be an armed career offender because the court held that North Carolina's common law robbery is not categorically a violent felony.
- **Mr. Qazi would like the court to view the Judgments of Conviction for the following defendants in this court:** *United States v. Hans Vincent Edling*, 2:15-cr-00300-KJD-NJK; *United States v. Michael Gomez-Amaro*, 2:17-cr-00278-JAD-CWH. *See* Exhibits 4 and 5.

Mr. Qazi denies the factual allegations listed in paragraph 46 (on page 15). At most, Mr. Qazi admits that he repeatedly "shoved" his girlfriend, and denies the remaining allegations. Mr. Qazi denies that his conviction should constitute a "crime of violence," and submits that the base offense level should be "14."

**4.      Paragraph 19: "Specific Offense Characteristics"**

In paragraph 19, "Specific Offense Characteristics," Mr. Qazi objects to the 4-level increase for using or possessing the firearm in the commission of another crime. Here, it is presumed that the "other crime," is his possession of methamphetamine and/or marijuana in alleged sufficient quantities to assume distribution. But this is not the case. Mr. Qazi did not possess the illegal substances with intent to distribute them, and in any case, did not use the firearm in any way, let alone in the commission of another crime. He was simply found in possession of the firearm, and also possession of illegal drugs. Those two factors alone are not tantamount to

6

possessing the firearm "in the commission of another crime." In paragraph 11, the PSR notes that the narcotics discovered in Mr. Qazi's possession at the time of his arrest were packaged for sale, and not personal use.  But Mr. Qazi denies this, and further, contends that the arresting officer's suggestions of this are hearsay.

    The 4-level enhancement under this provision should be omitted.

**5.**    **<u>Paragraph 46</u>**

    Mr. Qazi requests that the part of paragraph 46, that begins on page 15, starting with the words, "Lance's minor daughter jumped on Qazi's back in an attempt to defend her mother…," and ending with, "stomach several times," be stricken.

    Mr. Qazi also requests that the part of paragraph 46, that also begins on page 15, starting with the words, "Lance then jumped in front of Qazi to protect her daughter…," and ending with, "he fled prior to the officers' arrival," be stricken.  Mr. Qazi denies this recitation of the events.  Mr. Qazi points out that these alleged events were not proved beyond a reasonable doubt in a court of law, and Mr. Qazi was not convicted of these events.

    If the court is not inclined to strike the foregoing language, then Mr. Qazi requests that all of this paragraph (46) be placed in a sealed addendum to the PSR.

    Although the court agreed, in open court, on November 16, 2018, to allow Mr. Qazi to insert a sentence denying the allegations of this paragraph, he declines to do so, as he believes, it would not help.  Mr. Qazi confirmed the same with counsel.

**6.**    **<u>Paragraphs 33 and 62</u>**

    Mr. Qazi was assessed 1 point for "Carrying a Concealed Weapon," a Misdemeanor, in the Nevada state court.  ***See*** **page 9**.  The Docket No. is **PC06M11652X**.  The date of arrest was **5/15/2006**.

One problem with this assessment is that "attorney representation is unknown." Where attorney representation is unknown, it is respectfully submitted, that it is not appropriate that Mr. Qazi receive any points for the offense.

Furthermore, and more importantly, Mr. Qazi is being inappropriately charged for this offense, in any case. If the court were to look at paragraph 62, it will show that, *for the same offense,* Concealed Carry, *it was noted that the charge was "denied," and therefore, carries "0" points.* **See page 20**. The Docket No. is the same as the Concealed Carry offense on page 9: **PC06M11652X**. The date of arrest is also the same: **5/15/2006**. If in one part of the report, the PSR states that Mr. Qazi's offense should carry "0" points, and in another part it states that it is unknown whether he had counsel, and yet carries "1" point, it is most appropriate that the offense simply carry "0" points, and the two paragraphs consolidated.

**7.    Paragraphs 39 and 44**

In paragraph 39 of the PSR, Mr. Qazi is assessed 2 points for "Attempt Pandering," a Gross Misdemeanor. The Docket No. is **C249750**. *See* page 11. Mr. Qazi was initially sentenced on this offense in the Nevada state court on 3/30/2009. On 10/21/2009, Mr. Qazi was sentenced for a violation of probation involving this offense. *See* page 11. But this was not done on a separate case number, but was actually just a re-sentencing of the same case. *See id.*; *see* Exhibit 1. On the very same day, Mr. Qazi was sentenced for "Attempted Theft." *See* paragraph 44, on page 13. The Docket No. is **C254587.** The court allowed Mr. Qazi's sentence in this case to run concurrently with the aforementioned pandering charge. *See* page 13.

Thus, for two misdemeanor offenses, for which his ultimate sentence was to run concurrently, Mr. Qazi was assessed "4" points (2 points, and 2 points again). Instead, Mr. Qazi should be assessed a single 2 points. *See* § 4A1.2(2).

8

8. **Paragraph 45**

Mr. Qazi wants to alert the court that his conviction for "Battery" was not legitimate. He believes that he was not at liberty (but in custody) at the time of the alleged commission of the offense. For that reason, he did not sign the form for Battery with Domestic Violence, and he believes that his attorney entered a plea of guilty on his behalf. (That may be a possibility in the state's Justice Court, where an attorney may do so with authority from his client.) *See, e.g.,* Exhibit 2 (provided by, and included at, the strong request of Mr. Qazi). Aside from noting that two charges were dismissed, the PSR notes that "further details are unknown." Mr. Qazi is not sure that he was ever assessed any prison time for this offense. Counsel for Mr. Qazi has tried to reach out to Mr. Qazi's prior counsel for this charge, or who is believed to have been, but has so far been unable to make contact.

9. **Paragraph 70**

Mr. Qazi's mother's maiden name is misspelled as "Uearte." Her name is properly spelled "Ugarte."

10. **Paragraph 77**

Mr. Qazi denies that he was ever in a gang, and requests that this paragraph be stricken.

If the court is not inclined to strike this sentence, alternatively, Mr. Qazi requests the following language be added:

"Mr. Qazi denies ever having been a member of any gang."

11. ***Trial Services Information/Custodial Status:***

Under "Adjustment to Custody," (paragraphs 5-9), the PSR asserts various factual assertions regarding combative incidents involving him. Mr. Qazi contests the presence of these in his PSR, as none of them were formally charged or investigated, and he had no opportunity to

formally defend himself against them.  Mr. Qazi contends that the descriptions of the incidents do not reflect his side of the story, and include inaccuracies.  In particular, the July 4, 2018 incident described by Probation does not mention that Mr. Qazi requested to file a formal complaint about the religious discrimination that he perceived he sustained at the hands of the staff and administration.  Mr. Qazi's version of the events include his meeting with the then-Warden of the detention center where he is being held in custody, Jean Killian.  Ms. Killian had promised to Mr. Qazi, as well as his fellow inmates with religious objections to eating certain foods ordinarily given to inmates on holidays, in this case, the Fourth of July.  Ms. Killian had proposed a solution that satisfied Mr. Qazi and the other similarly-situated inmates at the meeting.  However, when the day came round, the staff of the prison either flagrantly disregarded the plan for the special meal, or failed to follow it.  In any event, it was an emotionally trying situation that escalated quickly, and not all to the fault of Mr. Qazi.  Mr. Qazi is prepared to state on the record at his sentencing the details from his point of view.

Even if accurate, however, Mr. Qazi disputes the relevance of his alleged incidents in custody to his PSR, and requests that they be stricken.

**12.**     ***Adjustment for Acceptance of Responsibility*:**

In paragraph 15, the PSR denies that Mr. Qazi accepted responsibility for his conduct.  However, Mr. Qazi maintains that he accepted responsibility for being a felon, and for possessing the firearm, two essential elements of his offense.[3]  In fact, Mr. Qazi early in the case signed a stipulation that he was a felon, and closer to trial, as this court well knows, proffered a stipulation that he possessed a firearm.  His proffered "unilateral stipulation" was rejected by the government, and only partly granted by the court, but it nonetheless indicates that Mr. Qazi did not intend to put the government to its proof on this element.

Mr. Qazi's intent in going to trial was to contest the element of "interstate commerce."  It was a strictly legal contention, and not a factual one.  However, slight or marginal the legal viability

---

[3] *See* 18 U.S.C. § 922(g)(1); 18 U.S.C. § 924(a)(2).

of this claim might be, it does not tend to contravene his "acceptance of responsibility." It is true that Acceptance of Responsibility "is not intended to apply to a defendant who puts the government to its burden of proof at trial ***by denying the essential factual elements of guilt***."[4] But Mr. Qazi did <u>not</u> deny the "essential factual elements of guilt." He focused instead on his legal argument that the firearm did not travel in interstate commerce. Indeed, Mr. Qazi tried, without success, to 100% stipulate to the fact that he, a felon, was in possession of a firearm, obviating the government's burden of proving that second element. (The government did not have the burden of proving the first element inasmuch as Mr. Qazi had already entered a joint stipulation with the government regarding it). Mr. Qazi plainly did not put the government to the burden of proving that he was in possession of the firearm, and an assertion that he did is plainly inaccurate.

Mr. Qazi felt that he had no other means to contest the factual contention that the firearm that he possessed passed in interstate commerce except by proceeding to trial on it. But the court can, and should, find that he "accepted responsibility" for his conduct, which he did not deny at trial. The USSG envisions this situation where it says:

> Conviction by trial, however, <u>does not automatically preclude a defendant from consideration for such a reduction</u> [for acceptance of responsibility]. In rare situations a defendant may clearly demonstrate an acceptance of responsibility for his criminal conduct even though he exercises his constitutional right to a trial. This may occur, ***for example***, where a defendant goes to trial to assert and preserve issues that do not relate to factual guilt (e.g. to make a constitutional challenge to a statute or a challenge to the applicability of a statute to his conduct)…[5]

Mr. Qazi presents that "rare situation." He went to trial to challenge that the firearm that he was found with actually passed through interstate commerce, and to challenge perceived government misconduct in relation to stopping him. This is just the kind of situation where he did not deny the principal "factual" aspects of his guilt, but to preserve issues of importance to his legal challenges.

---

[4] *See* <u>United States Sentencing Guidelines Manual</u> (USSG) at §3E1.1(2) (Emphasis added).
[5] *See id.* (Emphases added) (Underlined emphasis added to show that what follows is just an example, and not the only possible illustration of this principle).

11

however novel or unworkable. Thus, Mr. Qazi's assertion of his constitutional right to trial should not work against his having accepted responsibility, entitling him to "2" points in mitigation of his adjusted offense level.

13. **_Offender Characteristics:_**

Mr. Qazi denies that he subjected his girlfriend to domestic violence on several occasions, as stated in paragraph 74 (and in paragraph 119).

Mr. Qazi respectfully invites this court's considerable discretion in reviewing and considering his amended objections.

Dated this 29th day of November, 2018.

                              Respectfully submitted,

                              */s/ Telia U. Williams, Esq.*
By: _____
     TELIA U. WILLIAMS, ESQ.
     *Attorney for Omar Qazi*

**CERTIFICATE OF SERVICE**

I certify that on this 29th day of November, 2018, I caused the foregoing to be delivered by the Court's electronic notification system CM/ECF Program to the persons on the electronic mailing list for this case.

　　　　　　　　　　　　　　　　　　/s/ David DaSilva
　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　of The Law Office of Telia U. Williams